CC-1999-37                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| David Zapata Saavedra, et al.<br>    Recurridos<br><br>             v.<br><br>Alfredo Zapata Martínez, et al.<br>    Peticionarios | Certiorari<br><br>2002 TSPR 24<br><br>156 DPR _____ |

Número del Caso: AC-2000-42


Fecha: 20/febrero/2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Juez Ponente:
                   Hon. Héctor Urgell Cuebas


Abogados de la Parte Peticionaria:
                   Lcdo. Aurelio Roque Delgado
                   Lcdo. Milton D. Roque García


Abogada de la Parte Recurida:
                   Lcda. Carmen Amparo Ríos Rivera


Materia: Adopción


     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correcciones del proceso
     de compilación y publicación oficial de las decisiones del
     Tribunal. Su distribución electrónica se hace como un servicio
     público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

David Zapata Saavedra, *et al.*

    Recurridos

       v.                                        AC-2000-42

**Alfredo Zapata Martínez, *et al.***

    **Peticionarios**

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO**

**San Juan, Puerto Rico a 20 de febrero de 2002.**

**I**

    **La menor Lucía Castro Olmeda (en adelante "la menor"), nació el 6 de julio de 1983 en Fajardo, Puerto Rico, siendo sus padres Ana María Olmedo Padilla y Fernando Castro Nieves (en adelante "los padres biológicos"). Debido a la incapacidad de la madre y la imposibilidad del padre para cuidar de la menor por causa de su adicción a las drogas, a los seis meses de nacida, la madre decidió entregar la niña a su prima María Rosa Irizarry Rivera (en adelante "la madre adoptante"), y al esposo de ésta, David Zapata Saavedra (en adelante "el padre adoptante"), para que éstos se hicieran cargo del cuidado de la menor.**

Transcurrido poco más de cuatro años, el 23 de abril de 1998, el matrimonio Zapata Irizarry presentó una petición de adopción ante el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Durante la tramitación de la adopción, el padre adoptante estuvo padeciendo de una afección cardiaca, diabetes y apnea. No obstante, a pesar de sus limitaciones físicas, consintió a adoptar la menor. Asimismo, mediante escrito intitulado Comparecencia Especial, el 15 de mayo de 1998, la madre biológica de la niña consintió a la adopción.

Luego de varios trámites, el TPI señaló la celebración de una vista para el 17 de septiembre de 1998. En la madrugada de ese día, el padre adoptante murió, razón por la cual no se celebró la vista.

Así las cosas, el 29 de octubre de 1998, la madre adoptante solicitó al TPI que notificara sobre el procedimiento de adopción a los padres del finado, Alfredo Zapata Martínez y Carmen Ellit Saavedra del Toro (en adelante "los Peticionarios"). Los Peticionarios comparecieron solicitando intervenir como partes en el procedimiento de adopción, amparándose en la Regla 21.1 de las de Procedimiento Civil, R. Proc. Civil P.R. 21.1, 32 L.P.R.A. ap. III (1979), por alegadamente ser éstos herederos forzosos del padre adoptante. Además, los Peticionarios se opusieron a la adopción, alegando que su hijo les había manifestado no querer adoptar a la menor.

Oportunamente, la madre adoptante se opuso a la solicitud de intervención presentada por los Peticionarios. Adujo que, conforme a la Ley Núm. 9 de 19 de enero de 1995 (en adelante "la Ley de Adopción"), 32 L.P.R.A. sec. 2699o, los Peticionarios tenían derecho a ser oídos a los fines de establecer que el finado había desistido de su consentimiento a la adopción, mas no tenían derecho a intervenir como parte en el procedimiento. Entendió la madre adoptante que la Regla de Procedimiento Civil citada por los Peticionarios no era de aplicación, ya que la Ley de Adopción es una ley especial la cual limita la comparecencia de las partes a los fines antes señalados.

En cuanto a la oposición de los Peticionarios a la adopción por razón del alegado desistimiento del padre adoptante, la madre adoptante negó dichos planteamientos. Para sustentar sus alegaciones, anejó copia de la declaración

jurada del Doctor Miguel A. López Napoleoni. En síntesis, éste declaró que el padre adoptante fue su paciente desde el 31 de enero de 1998 hasta su fallecimiento el 17 de septiembre de 1998. Además expuso que, el 14 de septiembre de 1998 y el 16 de septiembre de 1998, el padre adoptante le expresó su interés en asistir a la vista de adopción a celebrarse el 17 de septiembre de 1998.[1]

Examinados los escritos presentados por los Peticionarios y las oposiciones a los mismos, mediante Resolución de 18 de mayo de 1999, el TPI limitó la intervención de los Peticionarios conforme a lo expuesto en el Artículo 16 de la Ley de Adopción, 32 L.P.R.A. sec. 2699o, y determinó que dicha disposición no viola precepto constitucional alguno. Además, ordenó citar a los Peticionarios para la vista señalada para el 24 de junio de 1999.

No conforme con las determinaciones del TPI, el 21 de junio de 1999, los Peticionarios acudieron ante el Tribunal de Circuito de Apelaciones (TCA). Solicitaron que dejara sin efecto la resolución emitida por el TPI, y la eventual suspensión de la vista señalada. El TCA examinó la disposición de la Ley de Adopción referente al procedimiento a seguir cuando uno de los adoptantes muere durante el proceso de adopción, 32 L.P.R.A. sec. 2699o, denegó la expedición del recurso de *certiorari* y declaró sin lugar la solicitud de paralización de la vista.

Celebrada la vista en su fondo, el 28 de junio de 1999, el TPI emitió *Resolución Decreto de Adopción*, en la cual concedió la adopción solicitada. De la misma surge que los padres biológicos fueron emplazados personalmente y que éstos no presentaron objeción a la adopción.

Las alegaciones de los adoptantes estuvieron sostenidas por los testimonios de la madre biológica, la trabajadora social de la Unidad de

---

[1] Mediante escrito titulado *Réplica a Solicitud de Intervención y Escrito de Interventores*, los Procuradores

continúa...

...1 continuación

Especiales de Relaciones de Familia comparecieron ante el TPI, solicitando que se proveyera no ha lugar a la solicitud de intervención y a la oposición de adopción presentada por los Peticionarios. Apéndice de la Petición de *Certiorari*, págs. 59-65.

Adopción del Departamento de la Familia, del Dr. Julio Lergier y su esposa (quienes son amigos de los adoptantes, y a su vez padres adoptivos de la hermana de la menor), y la hermana de la madre adoptante. Durante los procedimientos, el TPI designó a la Lic. María de Lourdes Rodríguez Valledor como defensora judicial de la menor. Tanto el Departamento de la Familia como la Defensora Judicial y la Procuradora de Relaciones de Familia recomendaron favorablemente la adopción.

De la resolución decretando la adopción surge que, los Peticionarios fueron escuchados en la vista, sin que se limitaran sus testimonios a la controversia del consentimiento del padre adoptante. Los Peticionarios alegaron, además, que el TPI carecía de jurisdicción por haber transcurrido más de ciento veinte (120) días desde la presentación de la petición de adopción sin que se decretara la misma. No obstante, el TPI resolvió que: "[l]uego de evaluar el expediente judicial, el tribunal concluyó que el tiempo requerido para la localización del padre biológico, la muerte del [padre adoptante] requiriendo una segunda evaluación por el Departamento de La Familia y la intervención de los [Peticionarios], son justa causa para la dilación de los procedimientos."[2]

Entre otras cosas, el TPI determinó que el padre biológico nunca veló ni se responsabilizó por la menor. Añadió que, a pesar de las limitaciones físicas del padre adoptante por razón de su estado de salud, éste consintió en adoptar a la menor habiendo compartido su custodia por aproximadamente cinco (5) años. Respecto al bienestar de la menor, concluyó que los adoptantes le han satisfecho todas sus necesidades físicas, económicas y emocionales, ofreciendo a ésta un hogar estable. Además, resolvió que, "[e]l ambiente de familia donde se ha desarrollado la menor le ha permitido presentarse como una niña felíz [sic], extrovertida y sociable."[3] A su vez, dicho ambiente familiar le ha permitido relacionarse frecuentemente con su hermana.

---

[2] *Resolución Decreto de Adopción*, emitida por el TPI el 28 de junio de 1999, Apéndice de la Petición de *Certiorari*, pág. 90.

[3] *Íd.*, pág. 91.

En cuanto a la capacidad económica de la madre adoptante, el TPI determinó que ésta tiene la capacidad de cubrir sus necesidades y las de la menor. Por último, concluyó que el padre adoptante no desistió de su consentimiento a la adopción.

El 11 de agosto de 1999, los Peticionarios acudieron ante el TCA impugnando el dictamen del TPI. En síntesis, alegaron *inter alia* que el TPI violó la cláusula del debido proceso de ley al no permitirles participar como partes en el procedimiento de adopción, y cuestionaron a su vez la constitucionalidad de la Ley de Adopción bajo la cláusula del debido proceso de ley. El TCA confirmó al TPI y concluyó que la intervención de los Peticionarios está limitada a demostrar y probar que su hijo, el padre adoptante, abandonó o desistió de la intención de adoptar a la menor; y que las disposiciones cuestionadas no presentan visos de inconstitucionalidad.

Inconformes, el 30 de junio de 2000, los Peticionarios acudieron ante nos mediante escrito de apelación, el cual acogimos como recurso de *certiorari*. Los Peticionarios imputan al TCA los siguientes errores:

I. Erró el tribunal al no observar rigurosamente el debido proceso de ley que garantiza la Constitución del Estado Libre Asociado de Puerto Rico, para la solución de esta controversia en los siguientes aspectos:
(a) Al no permitir la intervención.
(b) Al no declararse sin jurisdicción, por haber transcurrido el plazo que fija la ley para terminar el proceso de adopción.
(c) Al no integrar al proceso de adopción a los abuelos de la menor a adoptarse quien es huérfana de padre.
(d) Al no permitir la sustitución, al fallecer el futuro padre adoptante, por los herederos de éste.
(e) Al no declarar al futuro padre adoptante incapacitado.
(f) Al no requerir al Departamento de la Familia [que] entrevistar[a] a los padres del adoptante, antes de presentar su informe al Tribunal.
(g) Al no proteger el derecho de propiedad de los herederos del futuro padre adoptante.
II. La ley que establece el procedimiento para la adopción es inconstitucional.

Mediante resolución de 1 de septiembre de 2000, este Tribunal proveyó no ha lugar al recurso. Los peticionarios presentaron moción de reconsideración, a raíz de la cual reconsideramos nuestro dictamen anterior, y mediante resolución de 20 de octubre de 2000, expedimos auto de certiorari. Recibidos los alegatos correspondientes, resolvemos.

II

La adopción es un acto jurídico solemne, el cual supone la ruptura total del vínculo jurídico-familiar de un menor con su parentela biológica, y la consecuente filiación del menor con aquel o aquellos que han expresado la voluntad de que legalmente sea su hijo. *Virella Archilla v. Proc. Esp. Rel. Fam.*, res. el 7 de agosto de 2001, 154 D.P.R. __, 2001 TSPR 114, 2001 JTS 118, pág. 1631; *Feliciano Suárez*, Ex parte, 117 D.P.R. 402 (1986).[4] Bajo esta institución, se equipara la relación filiatoria adoptiva con aquella que se produce naturalmente, con iguales deberes y obligaciones jurídicas y sociales.

La adopción, como institución jurídica, cumple varios propósitos. En el aspecto social, tiene el fin de brindarle a los niños sin padres la oportunidad de criarse y educarse como es debido en el seno de un hogar adecuado, mientras que a su vez facilita a aquellas personas que loablemente han optado por acoger a dichos niños como si fueran biológicamente suyos, para atenderlos y brindarles el calor y la estabilidad de una familia funcional. *Virella Archilla v. Proc. Esp. Rel. Fam.*, supra; *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910 (1989); *Feliciano Suárez, Ex parte*, 117 D.P.R. 402 (1986). Ello, en atención a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados dentro de un hogar en el cual se supone que reciban amor, protección y cuidado.

Todo lo antes expresado debe ser alcanzado sin que de ninguna manera se sacrifique el propósito primordial de dicha institución, el bienestar del menor. En todo momento se debe proteger al menor, velando siempre que no se le separe indebidamente de sus padres, si las circunstancias particulares lo ameritan, observando simultáneamente que éstos reciban la orientación y ayuda adecuada. *Virella Archilla v. Proc. Esp. Rel. Fam.*, supra; *Ex parte J.A.A.*, 104 D.P.R. 551 (1976). "Sobre toda consideración, sin embargo, la decisión sobre si se autoriza o no la adopción descansa principalmente sobre la premisa de la conveniencia y el bienestar del menor." *Íd.*

---

[4] *Véase*, IV José Puig Brutau, *Compendio de Derecho Civil* 153 (1991); I Ruth Ortega-Vélez, *Compendio de Derecho de Familia* 466 § 7.7[1], (2000).

La institución de la adopción se rige en el aspecto sustantivo por el Código Civil de Puerto Rico, 31 L.P.R.A. sec. 531 *et seq.* En su aspecto procesal, está gobernada por el Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2699 *et seq.* Respecto a la interpretación del conjunto de normas sustantivas y procesales de la adopción, reiteradamente hemos señalado que, las mismas deben ser interpretadas liberalmente a favor del adoptando. *Virella Archilla v. Proc. Esp. Rel. Fam.*, *supra*, pág. 1632; *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 331 (1975); *Ex parte Ortiz y Lluveras*, 42 D.P.R. 350, 356 (1931). Sin embargo, enfáticamente hemos advertido que "la liberalidad en la interpretación no puede conducirnos a violentar la intención legislativa, ni a consagrar absurdos." *Virella Archilla v. Proc. Esp. Rel. Fam.*, *supra*, pág. 1632; *Rivera Coll v. Tribunal Superior*, *supra*.

En síntesis, las disposiciones sustantivas, disponen los requisitos para ser adoptante, la imposibilidad para serlo, quiénes pueden ser adoptados y las personas llamadas a consentir en la adopción, *inter alia*. El Art. 131 del Código Civil, según enmendado, dispone que "[n]o podrán ser adoptantes las **personas** declaradas incapaces por decreto judicial **mientras dure la incapacidad.**" 31 L.P.R.A. sec. 532. (Énfasis nuestro).

Los abuelos biológicos están llamados a consentir a la adopción cuando los padres biológicos sean menores de edad no emancipados. C. Civil P.R. art. 134(8), 31 L.P.R.A. sec. 535(8). "En ausencia de éstos, el tribunal designará **un defensor judicial** a los padres biológicos." *Íd.* (Énfasis nuestro). Nótese que la comparecencia concedida a los abuelos biológicos emerge del conjunto de deberes y obligaciones impuestas a éstos por la institución de la patria potestad. Este llamado a consentir no surge de su condición de abuelos biológicos. Este llamado cumple el propósito de suplir el consentimiento del padre biológico, quien por su minoridad las normas jurídicas no le reconocen capacidad para consentir.

### III

El procedimiento de adopción en Puerto Rico se rige hoy día por la Ley Núm. 9 de 19 de enero de 1995 (en adelante Ley de Adopción), 32 L.P.R.A. sec. 2699 *et seq.* Antes de 1995, imperaba un procedimiento de adopción engorroso

y riguroso, caracterizado por serios escollos y dilaciones innecesarias. *Exposición de Motivos de la Ley de Adopción, Leyes de Puerto Rico*, 1995, págs. 60-61. Esta problemática procesal atentaba contra la felicidad y la política pública de velar por el mejor bienestar de los menores a ser adoptados. *Íd.*

Atendiendo los serios escollos de la legislación pasada, se aprobó la nueva Ley de Adopción de 19 de enero de 1995. En su Exposición de Motivos, el legislador declaró como interés apremiante el cuidar y promover celosamente la conservación de la unidad familiar. Como corolario, señaló que "[e]s un derecho inalienable de los niños el poder vivir y crecer dentro del seno de un hogar feliz y al calor de sus padres." *Íd.*

Ante los diversos males sociales que atentan contra el bienestar de los menores, la intención legislativa va dirigida a prestar particular atención a los menores maltratados, abandonados y desamparados, para que mediante los mecanismos de adopción éstos puedan formar parte de hogares estables, donde a su vez encuentren la felicidad, el amor, la protección y el desarrollo físico, psicológico, mental y moral. *Íd.*

En atención al mejor bienestar del adoptando, el procedimiento de adopción debe ser expedito, flexible y confidencial, para así proteger el derecho constitucional a la intimidad de las partes envueltas. Ley de Adopción art. 1, 32 L.P.R.A. sec. 2699. Aun cuando el propósito principal de la Ley de Adopción es flexibilizar y expeditar el procedimiento de adopción, *Pérez Vega v. Proc. Esp. Rel. Fam.*, res. el 27 de abril de 1999, 148 D.P.R. \_\_, 1999 TSPR 64, 99 JTS 70, pág. 961, ello no implica un menoscabo en la intervención del Estado; por el contrario, la Asamblea Legislativa reconoce como principio rector la intervención intensa del Estado para asegurar, en la medida en que sea posible, el bienestar y conveniencia del menor. Exposición de Motivos de la Ley de Adopción.

La Ley de Adopción declara como política pública lo siguiente:[5]

(1) . . . .

(2) El facilitar en la forma más liberal y amplia posible dentro del esquema jurídico que rige en Puerto Rico los procedimientos de adopción, proveyendo para un procedimiento

---

[5] 32 L.P.R.A. sec. 2699.

> simple, sencillo y expedito cuyo trámite total no exceda de ciento veinte (120) días desde su inicio hasta su resolución final, además simplificar y liberalizar sustancialmente los requisitos de ley para la emisión de decretos de adopción.
>
> (3) La firme aplicación de este estatuto envuelve un interés social apremiante, de la más alta importancia, considerando la época contemporánea en que por razones evidentemente imputables a padres irresponsables y a otros sectores de la sociedad hay miles de niños maltratados, desamparados, abandonados y sin hogar alguno.
>
> (4) . . . .

Surge del texto antes citado que, el legislador flexibilizó y agilizó los procedimientos de adopción con el propósito de proveer el mejor bienestar a los menores, de modo que éstos se incorporen a un hogar saludable, evitando en la medida que sea posible exponerlos a mayor sufrimiento y dolor de los que ya albergan en su ser por causa del maltrato, desamparo o abandono al que han sido expuestos.

En el Art. 2 de la Ley de Adopción se reitera que el procedimiento será expedito y flexible, y que el mismo deberá ser tramitado dentro de un término máximo de ciento veinte (120) días a partir de la petición de adopción. 32 L.P.R.A. sec. 2699a. Al establecer que el procedimiento de adopción será expedito[6] y flexible, denota que el proceso ha de ser desenmarañado o libre de los requerimientos procesales ordinarios que en el pasado dilataban en extremo el decreto de la filiación adoptiva y frustraban a su vez la política pública del Estado de velar por el bienestar de los menores desamparados y abandonados.

Una vez presentada la petición de adopción, se notificará a los padres biológicos o al tutor del menor, cuando éstos no hayan dado su consentimiento en el escrito de petición. Ley de Adopción, 32 L.P.R.A. sec. 2699c(1). Además, tendrá que notificarse al Procurador de Familia (y en su defecto al Director de la Oficina de Investigación y Procesamiento de Asuntos de Menores y Familia del Departamento de Justicia), al Secretario de Familia y a las

---

[6] La Real Academia Española define expedito como: desembarazado, libre de todo estorbo. Real Academia Española, *Diccionario de la Lengua Española* 660 (XXI ed. 1992). Significa además, despejado, desocupado, libre. Ángel López García-Molins, *Diccionario de Sinónimos y Antónimos de la Lengua Española* 450, (1985).

personas con las cuales el adoptando haya estado residiendo al momento de presentarse la petición de adopción. Ley de Adopción, 32 L.P.R.A. sec. 2699c[3] (Supl. 2001). Tanto el Procurador de Familia como el Secretario de Familia han de ser notificados para asegurar la intensa intervención del Estado con el propósito de velar por el mejor bienestar del menor. Dado el conocimiento especializado que se reconoce al Secretario de Familia en esta materia, éste alberga la responsabilidad de realizar el estudio social pericial correspondiente y rendir un informe al respecto. *Íd.*

Toda persona con derecho a ser notificada podrá exponer su posición en torno a la petición de adopción. Ley de Adopción, 32 L.P.R.A. sec. 2699c(6). Los padres con patria potestad y aquellos que no la ejerzan por razón de un decreto judicial de divorcio, así como el tutor o custodio del adoptando, el adoptando que tiene menos de diez años y más de siete años de edad,[7] y los abuelos del adoptando menor de edad huérfano de padres o de padre o madre, tendrán derecho a ser oídos **en el procedimiento de adopción.** *Íd.*

Una vez iniciado el procedimiento y sin que se hubiese emitido el decreto de adopción, si la persona o personas que pretenden convertirse en padres adoptantes fallecieren, se presumirá consentida la misma. Ley de Adopción, 32 L.P.R.A. sec. 2699o. "En estos casos, el tribunal podrá aprobar la adopción siempre que, a la fecha del fallecimiento del adoptante o adoptantes, el adoptando hubiere vivido en el hogar de éstos por lo menos seis (6) meses antes de su fallecimiento." *Íd.* El tribunal designará un defensor judicial al adoptando y notificará a los herederos forzosos, o presuntos herederos forzosos, del adoptante fallecido; quienes podrán rebatir la presunción sobre el consentimiento del causante. Se concede a los herederos forzosos del peticionario fallecido el derecho a ser oídos en el procedimiento de adopción, a los fines de establecer que el causante había desistido de su consentimiento a la adopción dentro del período de la presentación de la petición y su fallecimiento. *Íd.* **Conforme a la Ley de Adopción,** los herederos forzosos tendrán el peso de la prueba. *Íd.*

---

[7] Los adoptandos mayores de diez (10) años deben consentir a la adopción. C. Civil P.R. art. 134(2), 31 L.P.R.A. sec. 535(2).

IV

Antes de considerar los planteamientos constitucionales sobre el debido proceso de ley, debemos dirimir si los demás errores señalados fueron cometidos, conforme a las disposiciones referente a la institución de la adopción.

A. *Derecho de los Peticionarios a intervenir como parte en el procedimiento de adopción*

Arguyen los Peticionarios que conforme a la Regla 21.1 de las de Procedimiento Civil, *supra*, se les debió permitir intervenir en el procedimiento de adopción como partes, por ser éstos los herederos forzosos del padre adoptante. No les asiste la razón.

Como expusiéramos anteriormente, la Ley de Adopción estableció un procedimiento especial con el propósito de expeditar y flexibilizar el procedimiento de adopción. Aun cuando el derecho hereditario de los Peticionarios se vea afectado por el decreto de adopción, ello no significa que deba aplicarse la Regla 21.1 de Procedimiento Civil, que regula la intervención de partes, a este tipo de caso, lo cual desarticularía la política pública enmarcada por la Ley de Adopción y los propósitos de ésta en beneficio de los niños maltratados, abandonados y desamparados.

El derecho de los Peticionarios en este caso se limita exclusivamente a ser oídos, a los efectos de establecer el desistimiento del Padre Adoptante en cuanto a su consentimiento a la adopción. Ley de Adopción, 32 L.P.R.A. sec. 2699o. No aplican, por consiguiente, los principios de intervención como partes que ordinariamente rigen los procedimientos bajo la Regla 21.1, *supra*.

El procedimiento de adopción fue creado con el propósito de proveer una oportunidad de vida dentro del calor del seno familiar a menores que han sido maltratados, abandonados o desamparados. No es propio convertir el procedimiento de adopción en un pleito de herencia. Una vez decretada la adopción, los que reclaman ser herederos del padre adoptante podrán dilucidar, mediante el derecho de sucesión aplicable, lo que corresponda a través de acuerdos o mediante acción judicial.

B. *Jurisdicción del TPI al haber transcurrido más de ciento veinte (120) días desde la presentación de la petición de adopción hasta su resolución final*

Señalan los Peticionarios que el TPI actuó sin jurisdicción al haber transcurrido ciento veinte (120) días sin haber emitido el decreto de adopción.

La Ley de Adopción requiere que el procedimiento sea tramitado dentro de un término de ciento veinte (120) días. El Art. 2 de la Ley de Adopción dispone: "El procedimiento de adopción será expedito y flexible, y deberá ser tramitado en su totalidad dentro de un término máximo de ciento veinte (120) días a partir de la presentación de adopción hasta su resolución final." 32 L.P.R.A. sec. 2699a. Los tribunales deben cumplir estrictamente con dicho requerimiento en pro de la conveniencia y bienestar del menor. Conforme al término establecido se impone al tribunal y demás partes en el procedimiento de adopción, actuar pronta y diligentemente en la tramitación del mismo, para que el menor recupere el derecho natural a criarse, educarse y ser amado dentro de un hogar, derecho que por circunstancias particulares le ha sido arrebatado.

Resolvemos que el término dispuesto es de estricto cumplimiento, no jurisdiccional. El mismo no debe aplicarse de manera irrazonable e inflexible, de modo que impida el propósito primordial de la institución de la adopción, el bienestar del menor. Cuando las circunstancias particulares lo ameriten y redunde en el bienestar del menor, el procedimiento podrá extenderse por un término mayor al establecido. Sin embargo, debe mediar justa causa para que el tribunal extienda dicho término. El procedimiento de adopción es uno expedito y flexible, no un procedimiento sumario; por lo que el mismo admite la posibilidad de concluir los procedimientos luego de haber transcurrido más de ciento veinte (120) días, siempre que el juzgador determine que ha mediado justa causa para su extensión y que la misma redunde en el mejor bienestar del menor.

Concluyó el TPI que, luego de evaluar los autos ante sí, la dilación de los procedimientos estuvo justificada por el tiempo requerido para la localización del padre biológico; la muerte del padre adoptante, lo cual requirió una segunda evaluación del Departamento de la Familia; y la amplia participación de los Peticionarios. Tras evaluar la totalidad de los autos del caso, entendemos que las circunstancias particulares surgidas en este caso

y las razones esgrimidas por el TPI como fundamento para la dilación de los procedimientos, satisfacen el criterio de justa causa.

   *C. Integración de los abuelos biológicos al procedimiento de adopción*

   Las normas sustantivas de adopción disponen que, los abuelos biológicos están llamados a consentir a la adopción cuando los padres biológicos del menor a ser adoptado son menores de edad no emancipados.  C. Civil P.R. art. 134(8), 31 L.P.R.A. sec. 535(8).  Bajo la normativa sustantiva no se concede ningún otro derecho a los abuelos biológicos, ni siquiera cuando el padre biológico del menor a ser adoptado le ha premuerto.  La intervención concedida a los abuelos biológicos se limita a los fines de suplir el consentimiento de los padres biológicos, que por disposición estatutaria están impedidos de prestarlo.

   En busca del mejor bienestar del menor, la Ley de Adopción reconoce a los abuelos biológicos del adoptado menor de edad huérfano de padres o de padre o madre, el derecho a ser oídos.  32 L.P.R.A. sec 2699c(6).  No obstante, no requiere que éstos sean notificados cuando durante la tramitación del proceso muere su hijo o hija, quien a su vez es el padre o madre del menor a ser adoptado. Entendemos que este derecho ha sido reconocido en atención a la relación afectiva que comúnmente se desarrolla dentro de nuestra cultura entre abuelos y nietos.  Esta normativa responde a la política pública de buscar el mejor bienestar del menor, en el sentido de que, en ausencia de uno de los padres biológicos o la ausencia de ambos, el parecer u opinión de los abuelos biológicos que se han relacionado con sus nietos es un insumo de gran valor para el juzgador de los hechos en sus determinaciones respecto a la conveniencia de la adopción para el menor.

   Arguyen los Peticionarios que era indispensable la presencia de los abuelos biológicos de la menor (padres del padre biológico), en el procedimiento.  Entendemos que los Peticionarios no poseen legitimación activa para reclamar los derechos que alegadamente les corresponden a los abuelos biológicos.

   Reiteradamente hemos expresado que, el reclamante de un derecho posee legitimación activa si cumple con los siguientes requisitos: 1) que ha sufrido

un daño claro y palpable; 2) que el referido daño es uno real, inmediato y preciso y no uno abstracto o hipotético; 3) que existe conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surge bajo el palio de la Constitución o de una ley. Véase, *Col. Peritos Elec. V. A.E.E.*, res el 22 de febrero de 2000, 150 D.P.R. __, 2000 TSPR 28, 2000 JTS 43; *Coss y U.P.R. v. C.E.E.*, 137 D.P.R. 877 (1995); *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Hernández Torres v. Hernández Colón*, 131 D.P.R. 593 (1992). Al determinar si un reclamante posee legitimación activa, el juzgador deberá tomar como ciertas sus alegaciones y las interpretará de la manera más favorable a éste. *Col. Peritos Elec. V. A.E.E.*, *supra*, pág. 746; *Col. Ópticos de P.R. v. Vani Visual Center*, *supra*, pág. 567.

Conforme a las normas sustantivas y procesales antes discutidas, es a los abuelos biológicos a quienes les ha sido concedido algún tipo de participación en el procedimiento de adopción, ello a tenor de las circunstancias dispuestas por ley. Tomando como ciertas las alegaciones de los Peticionarios, concluimos que éstos no han sufrido daño alguno por no haberse integrado al procedimiento los abuelos biológicos.

Según indicamos, el derecho de los Peticionarios se limita a ser oídos, a los fines de establecer que el padre adoptante desistió de su consentimiento a la adopción. Al no integrar a los abuelos biológicos, de ninguna forma se afectó el derecho a ser oídos de los Peticionarios. Por el contrario, surge de los autos que los Peticionarios tuvieron la oportunidad de ser oídos conforme a la Ley de Adopción; derecho que ejercieron sin restricción alguna.

Debemos señalar, además, que conforme a las disposiciones discutidas y las circunstancias particulares de este caso, no era indispensable la presencia de los abuelos biológicos de la menor en el procedimiento. Debemos notar que la menor fue entregada al cuidado de los padres adoptantes cuando apenas tenía seis (6) meses de nacida. Conforme a las determinaciones de hecho del TPI, el padre biológico nunca se preocupó por el bienestar de la menor. No podemos escapar ante la realidad de que el concepto de familia inmediata para la menor se limita a ella y sus padres adoptivos.

Con el propósito de conservar un proceso expedito y flexible, la Ley de Adopción concede a los abuelos biológicos de la menor el derecho a ser oídos, mas no requiere que el tribunal o las partes les notifiquen. Ya que éstos no están llamados por ley a consentir en el proceso, y siendo deber de éstos solicitar el ser oídos dentro del procedimiento, entendemos que no se cometió el error señalado por los Peticionarios al respecto.

### D. Inclusión de los Peticionarios como partes, en sustitución del Padre Adoptante

Los Peticionarios arguyen que a tenor de la Regla 22.1 de las de Procedimiento Civil, 32 L.P.R.A. ap. III,[8] el tribunal venía obligado a ordenar que éstos fueran incluidos como partes en el procedimiento de adopción en sustitución de su hijo, el padre adoptante.

Como ya indicáramos, el procedimiento establecido por la Ley de Adopción es un procedimiento especial, el cual concede a los herederos forzosos del padre o madre adoptante que ha muerto durante el procedimiento de adopción, el derecho a ser oídos. Indicamos, además, que este derecho no les permite ser partes en el procedimiento. Su intervención es con el único propósito de derrotar

---

[8] La Regla 22.1 dispone:

(a) Si una parte falleciere y la reclamación no quedare por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados notificarán de su fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días contados desde la fecha en que se conozca de tal hecho. El tribunal, a solicitud hecha dentro de los seis (6) meses siguientes a la fecha de dicha notificación, ordenará la sustitución de la parte fallecida por las partes apropiadas.

continúa...

...8 continuación

Si la sustitución no se hiciere, según se dispone anteriormente, el pleito será sobreseído en cuanto a la parte fallecida. Podrán presentar la solicitud de sustitución los sucesores o representantes del finado o cualquiera de las partes, y dicha solicitud se notificará a las partes en la forma dispuesta en la Regla 67, y a las que no lo fueren en la forma que dispone la Regla 4.

(b) De fallecer uno o más demandantes, o uno o más demandados, que fueren partes en un pleito en que el derecho reclamado subsista sólo a favor de los demandantes o en contra de los demandados que sobrevivan, el pleito no finalizará. Se consignará en los autos el hecho de la muerte y el pleito continuará en favor o en contra de las partes sobrevivientes.

la presunción establecida por la Ley de Adopción a los efectos de que el padre adoptante consintió a la adopción. Ley de Adopción, 32 L.P.R.A. sec. 2699o.

En vista de la política pública y los propósitos de la Ley de Adopción, resolvemos que resultan inaplicables las reglas sobre sustitución de parte, R. Proc. Civil P.R. 22.1, 32 L.P.R.A. ap. III, en los procedimientos de adopción, cuando muere el padre adoptante. En esta situación, el procedimiento prosigue con la madre adoptante como parte y con los herederos del padre adoptante fallecido con el derecho a ser oídos, según dispone la ley.

### E. Capacidad del Padre Adoptante para adoptar

Señalan los Peticionarios que el TPI debió haber determinado que el padre adoptante estaba incapacitado para adoptar a tenor del Art. 131 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 532. Entienden los Peticionarios que la incapacidad a la que se refiere el citado artículo no tiene que ser declarada por un tribunal de justicia y que la misma incluye todo tipo de incapacidad física. Dicha alegación es totalmente inmeritoria.

Antes del 19 de enero de 1995, el Art. 131 disponía que en los casos en que los adoptantes estuvieren casados éstos debían adoptar conjuntamente, salvo cuando éstos estuvieran separados o uno de ellos estuviera incapacitado. C. Civil P.R. art. 131, 31 L.P.R.A. sec. 532 (1993). Nada disponía sobre el tipo de incapacidad a que se refería. No obstante, dicha laguna fue atendida por la Ley Núm. 8 de 19 de enero de 1995, *supra,* que enmendó las disposiciones sustantivas relativas a la adopción. En lo pertinente, el Art. 131, según enmendado, dispone que, "[n]o podrán ser adoptantes las personas declaradas incapaces por decreto judicial mientras dure la incapacidad." C. Civil P.R. art. 131, 31 L.P.R.A. sec. 532 (Supl. 2001). (Énfasis nuestro.)

En vista de que el padre adoptante no ha sido declarado incapaz mediante decreto judicial, ni los Peticionarios cuestionaron la capacidad del padre adoptante para consentir a la adopción, concluimos que no se cometió el error señalado.

### F. Requerimiento al Departamento de la Familia para que entrevistara a los Peticionarios

Aducen los Peticionarios que el TPI debió exigir que el Departamento de la Familia los entrevistara en relación con la adopción, ya que consideran que son precisamente ellos quienes podían brindar con mayor exactitud información sobre el historial de los padres adoptivos.

La Ley de Adopción requiere una intervención intensa del Estado en el trámite de la adopción. Exposición de Motivos de la Ley de Adopción, *supra*. Dicha intervención se hace efectiva mediante la inclusión del Secretario de Familia y el Procurador de Familia como partes en el procedimiento. En vista del conocimiento especializado del Secretario de Familia, la Ley de Adopción requiere que éste realice un estudio social pericial y rinda el informe correspondiente, incluyendo sus recomendaciones respecto a la conveniencia de la adopción. Ley de Adopción, 32 L.P.R.A. secs. 2699c[3] & 2699e (Supl. 2001). No obstante, dicho informe no obliga al tribunal a actuar conforme a lo expresado en el mismo. 32 L.P.R.A. sec. 2699e(4).[9]

La Ley de Adopción sólo dispone cuál es el contenido del informe social pericial, pero nada establece respecto a las personas que deben ser entrevistadas. 32 L.P.R.A. sec. 2699e. Dado el conocimiento especializado del Secretario de Familia, el mismo tiene discreción para determinar a quiénes ha de entrevistar al conducir el estudio social pericial. Sin embargo, el tribunal tiene la facultad de ordenar al Departamento de Familia que entreviste a determinada persona en específico cuando el bienestar del menor así lo amerite y dicha orden no socave innecesariamente los propósitos de expeditar y flexibilizar el procedimiento de adopción. Además, dicha entrevista debe ser

---

[9] **2699e. Informe del estudio social pericial.**

El Departamento de la Familia rendirá un informe del estudio social pericial al tribunal para la adjudicación de toda petición de adopción de un menor de edad o incapacitado.
(1) . . . .
(2) . . . .
(3) . . . .
(4) *Alcance del informe.* – . . . .

El tribunal tomará en cuenta el contenido del informe así como las recomendaciones del trabajador social, pero no vendrá obligado a actuar conforme a lo expresado en ellos ni a las recomendaciones contenidas en el mismo.
. . . .
(5) . . . .

de tal importancia que sin ella el tribunal no pueda emitir un juicio sobre la conveniencia de la adopción para el adoptando.

Los Peticionarios no demostraron al TPI, de manera convincente, la importancia de ser entrevistados por el Departamento de Familia. Además, nos sorprende dicho planteamiento dado que el TPI permitió a los Peticionarios expresarse en el proceso sin limitación alguna, cuando en estricta norma jurídica sólo tenían derecho a ser oídos, a los fines de derrotar la presunción sobre el consentimiento prestado por el padre adoptante. Deben recordar los Peticionarios que es el tribunal quien autoriza la adopción y no el Secretario de Familia. Entendemos que el TPI actuó correctamente al no requerir al Departamento de Familia que entrevistara a los Peticionarios, como éstos pretendían.

V

La sección 7 del Artículo II de la Constitución de Puerto Rico, al igual que las enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que ninguna persona sea privada de su libertad o propiedad sin un debido proceso de ley. Const. E.L.A. art. II, sec. 7, 1 L.P.R.A.

El debido proceso de ley se manifiesta en dos vertientes distintas: sustantiva y procesal. En su vertiente sustantiva, el tribunal examina la validez de una ley, conforme a los preceptos constitucionales pertinentes, a los fines de proteger los derechos fundamentales de las personas. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 887 (1993). Bajo este análisis, el Estado está impedido de aprobar leyes o realizar alguna actuación que afecte de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *Íd.*; *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992); *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 273 (1987). Además, la misma debe tener una relación real y sustancial con el interés estatal que se persigue. *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28, 74 (1993); *A. Roig, Sucrs. v. Junta Azucarera*, 77 D.P.R. 342, 357 (1954); *Nebbia v. New York*, 291 U.S. 502, 525 (1934). En *Morales v. Lizarribar*, 100 D.P.R. 717, 731 (1972), resolvimos que, los tribunales "no entrarán en consideraciones sobre la sabiduría de las medidas legislativas, sino que sostendrán su

constitucionalidad a menos que no tengan un propósito público legítimo, o sean claramente arbitrarias, o que no guarden una relación razonable con el propósito público que persiguen." Véase, *Defendini Collazo et al. v. E.L.A., Cotto*, *supra*.

El debido proceso de ley procesal "impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo." *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*; *López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219 (1987). Al determinar cuál es el proceso apropiado para privar algún individuo de un derecho protegido, debemos observar los tres (3) criterios establecidos por el Tribunal Supremo de los Estados Unidos en *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) determinar cuáles son los intereses afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Véase, *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*, pág. 888; *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982).

Veamos, en primer lugar, si el Tribunal observó rigurosamente el debido proceso de ley en este caso.

## A.

El procedimiento celebrado ante el TPI fue uno de adopción, el mismo no envolvía controversias de índole sucesoral. Basta una somera lectura del texto de la Ley de Adopción para darse cuenta de que es inadmisible ventilar controversias que nada tienen que ver con la conveniencia y el bienestar del menor al éste ser adoptado.

No vemos de qué manera el TPI violó la cláusula sobre debido proceso de ley, cuando dicho foro le permitió a los Peticionarios presentar prueba para refutar la presunción sobre el consentimiento del padre adoptante a la adopción, y les concedió además, sin ser ello necesario, una participación mayor a la que les es reconocida por la Ley de Adopción, *supra*. El TPI observó un

procedimiento justo y equitativo, por lo que concluimos que dicho tribunal cumplió con la cláusula sobre el debido proceso de ley.

Como anteriormente expresamos, no es propio tornar el procedimiento de adopción en un pleito de herencia. Una vez decretada la adopción, aquellos que entiendan que tienen una participación en la herencia del padre adoptante, podrán dilucidar sus derechos hereditarios dentro del pleito correspondiente conforme al derecho sucesoral.[10]

### B.

En segundo lugar, los Peticionarios atacan la constitucionalidad de la Ley de Adopción, porque ésta sólo les concede el derecho a ser oídos y no les permite ser partes en el pleito, privándoles de esta forma de sus derechos hereditarios. Además, alegan que las disposiciones de la Ley de Adopción violan la cláusula sobre el debido proceso de ley ya que, de faltar el padre adoptante, recaería sobre ellos la obligación de alimentar a la menor.

La Ley de Adopción fue aprobada con el propósito de proveer un hogar funcional a niños maltratados, abandonados o desamparados. El propósito primordial de dicha legislación es la conveniencia y el bienestar del menor a ser adoptado. Esta legislación obedece al interés apremiante del Estado de proteger a los niños de nuestro país que han sido maltratados, abandonados o desamparados, brindándoles a su vez la oportunidad de vivir dignamente resguardados por el calor de una familia. Entendemos que el derecho de todo niño a vivir bajo el ala protectora de un hogar es consustancial al derecho a la vida garantizado por la Constitución de Puerto Rico. Const. E.L.A. art. II, sec. 7, 1 L.P.R.A.

La declaración de política pública de la Ley de Adopción dispone que el procedimiento de adopción ha de ser confidencial, para así proteger el derecho

---

[10] Luego de la muerte del padre adoptante se inició un procedimiento independiente sobre declaratoria de herederos. Mediante Resolución de 2 de marzo de 1999, se declaró a los Peticionarios como únicos y universales herederos del padre adoptante, y a su viuda en la cuota viudal usufructuaria. La declaratoria de herederos fue emitida sin perjuicio de tercero con mejor derecho. En dicha Resolución el tribunal tomó conocimiento del procedimiento para adoptar a la menor. El tribunal concluyó: "[e]ste tribunal retiene jurisdicción para, en caso de que se conceda la adopción solicitada, enmendar la presente declaratoria de herederos." Resolución de 2 de marzo de 1999,

constitucional a la intimidad de las partes. 32 L.P.R.A. sec. 2699. Nótese que, la Ley de Adopción garantiza al menor derechos fundamentales, tales como el derecho a vivir con una familia y su derecho a la intimidad.

Aun cuando el procedimiento de adopción puede tener algún efecto incidental sobre los derechos hereditarios, la misma no afecta de manera irrazonable, arbitraria o caprichosa los intereses de los Peticionarios. Además, la misma tiene una relación real y sustancial con el interés estatal que se persigue. Según expresáramos anteriormente, constituye un interés apremiante del Estado viabilizar el procedimiento de adopción y proteger a los niños desaventajados que han recibido el beso del maltrato, abandono y desamparo.

La adopción de un niño es una decisión que acarrea grandes responsabilidades morales, sociales y jurídicas, por lo que la voluntad y el compromiso de convertirse en padre o madre adoptante surge antes de la solicitud de adopción. Debe entenderse que el adoptante ha dado su consentimiento a la adopción desde el momento en que solicitó la misma, a menos que el adoptante desista del mismo durante el trámite de adopción. La Ley de Adopción presume que si el adoptante muere antes de finalizar el procedimiento, se entenderá que ha fallecido manteniendo de forma íntegra su consentimiento a la adopción, siempre que, a la fecha del fallecimiento del adoptante, el adoptando hubiere vivido en el hogar de éste por lo menos seis (6) meses antes de su fallecimiento. Ley de Adopción, 32 L.P.R.A. sec. 2699o. En vista del interés apremiante del Estado en viabilizar el procedimiento de adopción y el mecanismo dispuesto por la ley aquí concernida, mediante la cual se le concede a los presuntos herederos forzosos del peticionario fallecido el derecho a rebatir la presunción establecida, entendemos que la Ley de Adopción es constitucionalmente válida.

Bajo el palio de la Constitución del Estado Libre Asociado de Puerto Rico, la protección y el bienestar de los niños están revestidos de una importancia mayor que las consecuencias u obligaciones incidentales al decreto de adopción.

---

emitida en el procedimiento sobre declaratoria de herederos Civil Núm. KJV 99-0148, Apéndice de la Petición de *Certiorari*, pág. 66.

Por las razones que anteceden, confirmamos el dictamen del Tribunal de Circuito de Apelaciones. El trámite seguido por el Tribunal de Primera Instancia cumplió con las disposiciones de la Ley Núm. 9 de 19 de enero de 1995, *supra,* y ambos, a su vez, cumplen con los requisitos del debido proceso de ley.

Se dictará Sentencia de conformidad.


BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

David Zapata Saavedra, *et al.*

    Recurridos

       v.                    AC-2000-42

**Alfredo Zapata Martínez, *et al.***

    **Peticionarios**

**SENTENCIA**

**San Juan, Puerto Rico a 20 de febrero de 2002.**

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se confirma el dictamen del Tribunal de Circuito de Apelaciones. El trámite seguido por el Tribunal de Primera Instancia cumplió con las disposiciones de la Ley Núm. 9 de 19 de enero de 1995, *supra*, y ambos, a su vez, cumplen con los requisitos del debido proceso de ley.**

**Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Juez Asociada señora Naveira de Rodón concurre con el resultado con opinión escrita, a la cual se une el Juez Asociado señor Fuster Berlingeri.**

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

David Zapata Saavedra, *et al.*

    Recurridos

        v.

                      AC-2000-42

Alfredo Zapata Martínez, *et al.*

    Peticionarios

Opinión Concurrente emitida por la Juez Asociada señora NAVEIRA DE RODÓN, a la cual se une el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 20 de febrero de 2002

Aunque debido a los hechos procesales y sustantivos de este caso estamos de acuerdo con el resultado al que llega la mayoría, [11] genuinas preocupaciones en cuanto a la interpretación de algunas de las disposiciones de la Ley Núm. 9 de 9

---

[11] En el caso ante nuestra consideración, a pesar de que tanto el tribunal de instancia como el Tribunal de Circuito de Apelaciones interpretaron que los peticionarios sólo tenían un derecho limitado a intervenir en el caso, se les permitió intervenir más allá de lo originalmente decretado. De la evidencia presentada surge con claridad que la concesión de la adopción definitivamente beneficiaba y era para los mejores intereses de la menor, por lo tanto, procedía la concesión de la solicitud de adopción.

de enero de 1995 (en adelante Ley de Adopción), las cuales podrían constituir precedente o ser persuasivas para casos futuros, no nos permiten brindarle nuestra completa conformidad a la Opinión Mayoritaria.

I

El 23 de abril de 1998, el Sr. David Zapata Saavedra y su esposa, la Sra. María Rosa Irizarry Rivera, presentaron una solicitud ante el Tribunal de Primera Instancia, Sala Superior de San Juan, para adoptar a la menor Lucía Olmeda Castro.[12]  La niña había estado bajo el cuidado de los esposos Zapata-Irizarry desde los seis (6) meses de nacida.[13]

Luego de los trámites procésales de rigor, el tribunal señaló vista en los méritos sobre la petición de adopción para el 17 de septiembre de 1998.  **En la madrugada de ese mismo día**, el Sr. Zapata falleció.[14]  Al momento de su muerte, el Sr. Zapata no tenía hijos.

El próximo 29 de octubre, la madre adoptante, Sra. Irizarry, solicitó al tribunal de instancia que notificase a los padres del finado, el Sr. Alfredo Zapata Martínez y la Sra. Carmen Ellit Saavedra (en adelante esposos Zapata-Saavedra) sobre el procedimiento de adopción.  Éstos comparecieron al tribunal solicitando intervención en el procedimiento, a tenor con la Regla 21.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.  A su vez, se opusieron a que se declarase a la menor como hija adoptiva del finado.

La Sra. Irizarry se opuso a lo solicitado por los esposos Zapata-Saavedra.  Alegó que de acuerdo al Art. 16 la Ley de Adopción, 32 L.P.R.A. § 2699o, los peticionarios, en su carácter de herederos forzosos del padre adoptante fallecido,[15] sólo tenían derecho a ser oídos en el

---

[12]  La niña nació el 6 de julio de 1993.

[13]  Los padres biológicos de la niña no estaban en condiciones de cuidar a la menor.  Su madre estaba incapacitada y su padre era un adicto a drogas.

[14]  Durante todo el procedimiento de adopción, el Sr. Zapata estuvo padeciendo varias enfermedades, inclusive una condición cardiaca.  No obstante, el Sr. Zapata continuó con su interés de adoptar a la menor.

procedimiento <u>para fines de establecer si el padre adoptante había desistido de su consentimiento a la adopción</u>, pero no tenían derecho a intervenir como partes para ningún otro fin.  Alegó la madre adoptante que por ser la Ley de Adopción una ley especial, la Regla 21.1 de Procedimiento Civil, <u>supra</u>, no era de aplicación.

El tribunal de instancia emitió una resolución en la cual limitó la intervención de los esposos Zapata-Saavedra de acuerdo con el Art. 16 de la Ley de Adopción, <u>supra</u>, y señaló vista para el 24 de junio de 1999. Inconformes con esta determinación, los esposos Zapata-Saavedra acudieron al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Éste denegó el recurso solicitado y declaró sin lugar la solicitud de los peticionarios de paralizar la vista.

El 24 de junio se celebró la vista de adopción según el tribunal de instancia lo había pautado.  En la misma se les permitió a los padres del fenecido adoptante una amplia intervención, es decir, no se limitó su participación a la existencia o no de consentimiento del adoptante fallecido a la adopción.  El 28 de junio de 1999, el tribunal de instancia dictó una 'resolución' en la cual declaró a la menor hija del finado, Sr. Zapata, y de la Sra. Irizarry, y como tal ordenó la inscripción de la niña en el Registro Demográfico.

De este dictamen los peticionarios apelaron al Tribunal de Circuito. El 30 de mayo de 2000, dicho foro dictó sentencia confirmando la determinación del tribunal de instancia.  Aún inconformes, los esposos Zapata-Saavedra recurrieron ante nos mediante recurso de apelación.

Decidimos revisar y expedimos el recurso, acogiéndolo como certiorari. Este Tribunal resuelve, entre otros extremos, que de acuerdo con los propósitos de la Ley de Adopción y la política pública al respecto, en

---

[15]    El 2 de mayo de 1999 el Tribunal de Instancia, Sala Superior de San Juan, emitió una Resolución en el caso <u>Ex parte María Rosa Irizarry Rivera</u>, Civil Núm. KJV 99-0148, en la cual declaró como únicos y universales herederos del finado David Alfred Zapata Saavedra a sus padres, los esposos Zapata-Saavedra.  En la resolución se hizo constar que el tribunal tenía conocimiento del procedimiento de adopción que se estaba llevando a cabo, por lo cual indicó que retendría jurisdicción "para en caso de que se conceda la adopción solicitada, enmendar la presente declaratoria de herederos."

situaciones como la de autos, en las cuales fallece uno de los padres adoptantes antes de finalizar el procedimiento de adopción, las Reglas de Procedimiento Civil sobre intervención no son de aplicación, ya que la Ley de Adopción limita la intervención de los herederos forzosos del adoptante fallecido exclusivamente a fines de establecer si éste consintió o no a la adopción.

Por las razones que expondremos continuación, entendemos que el derecho a intervención en estos caso es más amplio que lo interpretado por la mayoría. Veamos.

II

El Art. 16 de la Ley de Adopción, <u>supra</u>, dispone en lo pertinente, lo siguiente:

> Si la persona o personas que se proponen adoptar fallecieren una vez iniciado el procedimiento [de adopción] y aunque no se hubiese emitido el decreto de adopción, se considerará consentida la misma... El tribunal notificará a los herederos forzosos, designará un defensor judicial y el procedimiento continuará su trámite hasta su terminación. **Si los herederos forzosos del adoptante o adoptantes interesan establecer que el peticionarios fallecido había desistido de su consentimiento a la adopción entre el período de radicación de la solicitud y su fallecimiento, tendrán derecho a ser oídos en el procedimiento de adopción**...32 L.P.R.A. § 2699o (Énfasis suplido).

Como vemos, el Art. 16 contempla una situación en particular: herederos forzosos que interesan establecer que **el adoptante fallecido había desistido de su intención de adoptar**. Sin embargo, el Art. 16 no es la única disposición de la Ley de Adopción que regula el derecho a intervención en estos procedimientos, y se hace necesario interpretar dicha disposición en armonía otras disposiciones legales pertinentes al asunto que nos ocupa.

El Art. 3(2) de la Ley de Adopción, <u>supra</u>, 32 L.P.R.A. § 2699b(2), específicamente permite que, a discreción del tribunal, se admita en el procedimiento de adopción **"la intervención de cualquier parte interesada."** Así pues el tribunal, tiene la facultad bajo el Art. 3(2), de permitir la intervención en el caso de adopción a una persona que reclame un interés legítimo en el procedimiento, o cuyos intereses o derechos puedan verse afectados por el decreto de adopción. En caso de que esa persona sea además

heredero forzoso de un adoptante fallecido, al amparo del Art. 3(2) se le puede permitir a dicho heredero una participación más amplia que la establecida en el Art. 16.

La Ley de Adopción no cualifica específicamente la naturaleza y alcance de la intervención permitida por el Art. 3(2).  Por tanto, al ejercer la facultad que dicho artículo autoriza, el tribunal podrá aplicar de manera supletoria las Reglas de Procedimiento Civil, bajo la norma general de que "con relación a los procedimientos especiales, las Reglas de Procedimiento Civil serán derecho supletorio en tanto y en cuanto no conflijan con el propósito de la ley especial."  Art. 18 del Código Civil, 31 L.P.R.A. § 18; Pueblo v. Hernández Maldonado, 129 D.P.R. 472 (1991).

En el caso específico del Art. 3(2) y la intervención en los procedimientos de adopción, resulta lógico utilizar como guía la Regla 21.1 de Procedimiento Civil, supra, la cual regula el derecho de intervención en el procedimiento civil ordinario.  Según esta regla, mediante oportuna solicitud, una persona podrá intervenir en un pleito (1) cuando por ley o por las propias reglas se le confiera un derecho a intervenir; o (2) cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere quedar afectado con la disposición final del pleito.

Aunque como principio general, esta regla debe interpretarse liberalmente, esto no equivale a sancionar la intervención indiscriminada, ni a sentar el principio de que toda duda posible debe resolverse a favor de la intervención.  Rivera v. Morales, PC de 2 de noviembre de 1999; 149 D.P.R. ___ (1999); 99 TSPR 167; 99 JTS 170.  A estos efectos, expresamos en Chase Manhattan Bank v. Nesglo,Inc., 111 D.P.R. 767 (1981), a la pág. 770, lo siguiente:

> La Regla 21.1 impone límites a la intervención.  El solicitante debe reclamar algún derecho o interés en la propiedad o asunto objeto del litigio y debe demostrar que tal derecho o interés puede, de hecho, quedar afectado por la disposición final del pleito... El criterio a utilizarse es de orden más pragmático. ¿Existe de ipso un interés que amerite protección? ¿Quedaría afectado, como cuestión de práctica, tal interés por la ausencia del interventor en el caso?  (Énfasis suplido)

Estos principios son de fundamental importancia al analizar una solicitud de intervención bajo la Ley de Adopción. Debido al interés de que los casos de adopción se resuelvan de manera expedita, una solicitud de intervención en dichos procedimientos no debe analizarse ligeramente. Es necesario determinar, si a la luz de las alegaciones específicas de quienes interesan intervenir, se justifica que se conceda dicha solicitud. Ese análisis deberá hacerse caso a caso, tomando en consideración los propósitos de la Ley de Adopción *vis a vis* la naturaleza del derecho que pueda verse afectado si no se le permite a la parte intervenir en el procedimiento. Ése es el análisis que debe hacerse en el caso de autos. Veamos.

III

**En este caso, los esposos Zapata-Saavedra fundamentaron su derecho a intervenir en el procedimiento, no solamente en su carácter de herederos forzosos cuyos derechos hereditarios se podían ver afectados por el decreto de adopción, sino también porque, habiendo fallecido su hijo, padre adoptante, recaería sobre ellos la obligación legal de proteger, alimentar y educar a la menor.[16]**

**La política pública en Puerto Rico en cuanto a una solicitud de adopción es que ésta debe ser concedida en todo caso en que convenga para el bienestar del adoptando y sus mejores intereses. Art. 11 de la Ley de Adopción, <u>supra</u>, 32 L.P.R.A. sec. 2699j. No obstante, consideramos que tanto la Ley Núm. 9, <u>supra</u>, que establece el procedimiento para la adopción, como las disposiciones sustantivas del Código Civil sobre la**

---

[16] Página 10 de la Petición de Certiorari. Véase además, la página 1 de la solicitud de intervención, en la cual los peticionarios indicaron específicamente que, de decretarse la adopción "la ley les impone unas obligaciones para con la niña que se desea adoptar que los comparecientes no pueden ni desean asumir." De igual forma, en el 'Escrito de los interventores' presentado por los peticionarios conjuntamente con su solicitud de intervención, éstos indicaron que "la edad y condición de ambos comparecientes, pero especialmente de doña Carmen Ellit Saavedra Del Toro,

**adopción y los alimentos, Arts. 130 a 138 y 142 a 151 del Código Civil, 31 L.P.R.A. S 531 a 539 y 561 a 570, deben ser interpretados conjuntamente y de forma tal que se fomente y logre la política pública antes mencionada.**

**Con relación a la adopción y con el deber que tienen el Estado y los tribunales de velar por los mejores intereses y el bienestar del menor adoptando, aún más importante que el derecho de éste a heredar como sucesor de uno o ambos adoptantes,** <u>es la consideración que hay que darle al deber que recaerá sobre el adoptando y los parientes del adoptante fallecido, en este caso los abuelos paternos, de prestarse alimentos recíprocamente.</u> **Art. 143 del Código Civil, 31 L.P.R.A. § 562. Esta responsabilidad es independiente del carácter de herederos forzosos de aquellos que solicitan intervención en razón de que exista una gran probabilidad de puedan convertirse en alimentistas del adoptando, por haber fallecido el padre o madre adoptante.**

Al examinar la obligación de alimentar es necesario tomar en consideración el Art. 142 del Código Civil, 31 L.P.R.A § 561 el cual define, de forma amplia, lo que constituyen alimentos de menores. Dispone que éstos "comprenderán todo lo indispensable para el sustento, la habitación, vestido, asistencia médica, educación e instrucción del menor." El Art. 148 a su vez establece que **"[e]l obligado a prestar alimentos podrá**, **a su elección, satisfacerlos**, o pagando la pensión que se fije, o **<u>recibiendo y manteniendo en su propia casa al que tiene derecho a ellos</u>**." 31 L.P.R.A. § 567.

Ante lo que conlleva la responsabilidad de alimentar a un menor, no cabe duda que en casos como el de autos, en el cual uno de los adoptante ha fallecido, resulta de suma importancia para los mejores intereses y el bienestar del menor adoptando, que el tribunal evalúe el hogar de aquellos que podrían advenir obligado a prestarle alimentos, ya que ese podría llegar a ser el hogar de dicho menor y esos parientes sus custodios. A su vez, y a la luz de la responsabilidad que podría recaer sobre estos potenciales

---

les impiden cumplir con las responsabilidades que fija el Código Civil de Puerto Rico para con los nietos."

alimentantes, nos parece que el tribunal, de acuerdo a las normas sobre intervención antes discutidas, debería oír a estas personas que tan profundamente podrían afectar el bienestar del menor adoptando. Creemos que bajo estas circunstancias los posibles futuros alimentantes son partes interesadas a las cuales el tribunal, a su discreción, y al amparo del Art. 3(2) de la Ley Núm. 9, supra, puede autorizar y permitir intervención.

Esto en modo alguno significa que todo aquel que pudiera convertirse en alimentante de un adoptando tendrá un derecho automático a intervenir en el procedimiento de adopción. El tribunal deberá examinar cuidadosamente los méritos de la solicitud y las circunstancias del caso de adopción específico para determinar si efectivamente existe una posibilidad real o previsible de que la persona que solicita intervención pueda convertirse en alimentista del adoptando.

Debido a las circunstancias particulares del caso de autos, consideramos que esa posibilidad era lo suficientemente probable como para justificar una amplia intervención de los esposos Zapata-Saavedra en el procedimiento de adopción. En principio, el sólo hecho de haber muerto el padre adoptante, aumenta la posibilidad de que sobre los peticionarios, que por el decreto de adopción se han convertido en abuelos de la menor, recaiga la obligación de alimentar a ésta.

Dicha posibilidad se concretiza aún más cuando analizamos alegaciones no contradichas y determinaciones de hecho realizadas por el tribunal de instancia que tienden a demostrar que la madre adoptante no parece tener la capacidad económica suficiente para sostener a la menor. En el **escrito juramentado** que presentaron los esposos Zapata-Saavedra conjuntamente con su solicitud de intervención, éstos sostienen que ni el fallecido ni su esposa eran buenos administradores, por lo que ellos tuvieron que hacerle **"préstamos y donativos por $22,089 durante un lapso de aproximadamente diez años, y aún no se ha recibido abono alguno a los préstamos."** No surge del expediente que estas alegaciones juradas hayan sido contradichas por la madre adoptante. Lo que sí surge del expediente es que el propio tribunal

de instancia determinó que la madre adoptante, aunque mantenía su empleo,[17] no tiene una residencia propia, sino que **reside en una vivienda de sus padres, y por esta razón puede cubrir las necesidades de ella y la menor**. Mas aún, el tribunal de instancia indicó que una vez adoptada **la menor podrá recibir los beneficios del seguro social para cubrir los costos de su educación**.[18] O sea, que la madre adoptante no sólo parece no contar con la capacidad económica suficiente para costear una residencia propia para ella y la adoptando, sino que además parece depender de los beneficios especulativos que pudiera recibir la menor por concepto del seguro social del padre adoptante fallecido para garantizar la educación de ésta.

Estas circunstancias no militan en contra de la adopción *per sé*, pero ciertamente demuestran que la responsabilidad alimentaria que puede recaer sobre los esposos Zapata-Saavedra por ser abuelos de la menor, no es meramente especulativa. En estas circunstancias, estaba más que justificado que el tribunal admitiese el reclamo de los peticionarios de intervenir en el procedimiento más allá que para efectos de testificar sobre el consentimiento del adoptante fallecido a la adopción.

IV

Nuestra posición en este caso tiene un fundamento adicional. La Opinión Mayoritaria correctamente indica que los mecanismos de adopción deben propiciar el que los menores adoptandos "puedan formar parte de hogares estables, donde a su vez encuentren la felicidad, el amor, la protección y el desarrollo físico, psicológico, mental y moral." Además, se expresa que los procedimientos de adopción se flexibilizaron y agilizaron con "el propósito de proveer el mejor bienestar de los menores, de modo que éstos se incorporen a un hogar saludable evitando en la medida que sea posible exponerlos a mayor sufrimiento y dolor de los que ya albergan en su ser..."

---

[17] Según la propia madre adoptante, para el año 1999 ésta devengaba un sueldo de veinticuatro mil (24,000) dólares anuales.

Como podrá observarse, la estabilidad del hogar y el cariño que se le otorgará al adoptando son de primordial importancia en cualquier análisis que haga el tribunal sobre la procedencia o no de la concesión de una solicitud de adopción.

No obstante, en situaciones como la de autos, donde uno de los adoptantes fallece, la facultad del tribunal para evaluar la procedencia de la adopción cobra una importancia fundamental. Aunque el tribunal le debe dar deferencia a las evaluaciones y recomendaciones del Departamento de la Familia, las procuradoras de menores y las trabajadoras sociales, debido al particular conocimiento ("expertise") de éstas en esta área, la decisión final de conceder o no la adopción la hace el tribunal luego de evaluar y sopesar, de forma independiente, todos los hechos materiales pertinentes que han sido adecuadamente presentados ante su consideración.

En este caso, los esposos Zapata-Saavedra manifestaron que no era su deseo responsabilizarse por la menor ni tener lazos familiares con ésta. Si la madre adoptante no pudiese hacerse cargo, por cualquier razón, de cuidar a la menor adoptando, cabe la posibilidad de que esta familia, que ha hecho claro su deseo de no hacerse cargo de la menor se vea obligada, por razón de las responsabilidades que la propia ley les impone, a recibir a ésta en su hogar. En el futuro, situaciones como la presente deben atenderse con suma cautela, ya que bajo estas circunstancias el hogar disponible podría ser precisamente el de los parientes alimentantes. Estaríamos prácticamente imponiéndole a estas personas que, de acuerdo a la mayoría, no tienen derecho a intervenir y ser oídos, la obligación de convertirse en el equivalente del padre o madre adoptante. También podríamos estar exponiendo a la menor a otro procedimiento de adopción u hogar sustituto por no querer estas personas asumir la obligación que se pretende imponerles. Esto no necesariamente puede resultar en el bienestar y mejores intereses del menor. No le brindaría el hogar estable y cariño que persigue la ley.

---

[18] Cabe señalar que no obra en el expediente documento alguno que avale esta aseveración.

V

En conclusión, entendemos que el fallecimiento de uno de los adoptantes cambia dramáticamente las circunstancias bajo las cuales se solicitó la adopción y comenzó el procedimiento.[19]  Nos preguntamos si se cumple con el propósito de la ley al conceder una adopción sin analizar la nueva situación, donde el hogar de los parientes del adoptante fallecido que podría resultar ser el hogar de la menor adoptando y su nueva familia.  Una familia que puede no estar dispuesta a brindarle  amor y cariño, junto con el deber impuesto y no deseado de cuido.  Al no permitir la intervención de los parientes del adoptante fallecido, potenciales futuros alimentantes, se estaría privando al tribunal de información vital para poder emitir una decisión informada sobre la adopción.  El tribunal no tendrá ante sí todos los elementos de juicio que tan delicada determinación requiere.

Bajo la facultad que confiere el Art. 3(2) de la Ley de Adopción, nada impedía que el tribunal, en el ejercicio de su discreción, le permitiese a los esposos Zapata-Saavedra una amplia intervención en el procedimiento, dadas las circunstancias de este caso y habiéndose demostrado, a nuestro juicio, que una determinación sobre cómo se protegían los intereses de la menor requería una evaluación de las circunstancias de los esposos Zapata-Saavedra, ya que éstos podrían advenir custodios de la menor. Además, no cabe duda que en el caso de autos existe una posibilidad real de que los derechos de los peticionarios se vean directamente afectados por la determinación final del tribunal decretando la adopción.  Esto no debe ocurrir sin haberles brindado la oportunidad de ser oídos.

---

[19]    Todo lo que expresa la Opinión del Tribunal sobre el estado de derecho cuando ambos adoptantes fallecen antes de finalizar el procedimiento de adopción es dictum pues esa no es la situación del caso de autos.  Entendemos que la situación del fallecimiento de ambos adoptantes es dramáticamente

Resumiendo, concurrimos con el resultado al cual llega la mayoría por razón de que a los peticionarios y padres del adoptante fallecido se les permitió una amplia intervención en el procedimiento de adopción. No obstante, no podemos suscribir el criterio de la mayoría en tanto y en cuanto concluye que en casos en que uno de los adoptantes fallece, los herederos forzosos de dicho adoptante no tienen derecho a intervenir en el procedimiento de adopción más allá de lo que establece el Art. 16 de la Ley de Adopción, supra. Entendemos que bajo el Art. 3(2) de la referida ley el tribunal tiene discreción para concederle a una parte interesada, ya fueren herederos forzosos del adoptante fallecido o futuros alimentantes, amplia intervención en el procedimiento si éstos demuestran que sus derechos se verán afectados por la determinación que tome finalmente el tribunal con respecto a la adopción, o que su presencia en el pleito resultará necesaria para hacer una adecuada evaluación de los hechos, que permita determinar que la concesión de la solicitud de adopción es realmente en el mejor interés y bienestar del menor.


Miriam Naveira de Rodón
Juez Asociada

---

distinta y sólo debe ser analizada dentro del contexto de un caso que presente hechos adecuados.