EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Emmanuel Marcano Rivera<br><br>    Recurrido<br><br>        vs.<br><br> Departamento de Estado como Director Ejecutivo de Juntas Examinadoras, Etc.<br><br>        Peticionario | Certiorari<br><br>2005 TSPR 12<br><br>163 DPR ____ |

Número del Caso: CC-2003-0752

Fecha: 23 de febrero de 2005

Tribunal de Circuito de Apelaciones:

                    Circuito regional de San Juan Panel III

Juez Ponente:

            Hon. Jorge Segarra Olivero


Abogado Recurrido:

            Lcdo. Julio César López Gerena


Oficina del Procurador General:

            Lcdo. Guillermo A. Mangual Amador
            Procurador General Auxiliar

            Lcda. Laura Lis López Roche
            Procuradora General Auxiliar


Materia: Revisión procedente de la Junta de Peritos Electricistas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emmanuel Marcano Rivera

    Recurrido

        vs.                          CC-2003-752      Certiorari

Departamento de Estado como
Director Ejecutivo de Juntas
Examinadoras, Etc.

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI

San Juan, Puerto Rico, a 23 de febrero de 2005.

Nos toca precisar las facultades de una junta examinadora cuando un examen de reválida de una profesión queda viciado por la acción fraudulenta de alguno de sus miembros.

I.

El 5 de mayo de 2001 Emmanuel Marcano Rivera tomó la parte teórica del examen de reválida para perito electricista ofrecido por la Junta Examinadora de Peritos Electricistas (en adelante, la Junta). Tomó la parte práctica del examen el 12 de mayo del mismo año.

En junio de 2001 Marcano Rivera recibió una carta, fechada el 22 de junio, suscrita por

Pedro Sosa Reyes, Subdirector de la División de Juntas Examinadoras del Departamento de Estado. En la misiva, Sosa Reyes le informaba al aspirante que había aprobado la parte teórica del examen de reválida con cien por ciento (100%) y la parte práctica con ochenta por ciento (80%). La carta contenía además instrucciones para obtener la licencia en cuestión. Marcano Rivera presentó la documentación requerida.

En ese mismo año la Directora de las Juntas Examinadoras del Departamento de Estado advino en conocimiento de unas alegadas irregularidades cometidas durante el proceso de preparación o administración del examen de reválida para perito electricista ofrecido el 5 de mayo de 2001. Como prueba de ello, recibió un documento que contenía preguntas de selección múltiple similares a las que contenía el referido examen con las respuestas correctas ennegrecidas. A raíz de esto, le solicitó al Dr. Gabriel Cirino Gerena, Consultor Psicométrico del Departamento de Estado (en adelante, el Consultor), que realizara una investigación sobre este asunto. Dicho Consultor preparó un informe sobre el particular que reveló entre otros datos lo siguiente:

1. En el documento investigado se incluían 52 de las 60 preguntas que aparecieron en la prueba.

2. En el documento aparecían 6 preguntas que fueron incluidas en el borrador inicial discutido con la Junta, que no se utilizaron en el examen.

3. Las preguntas que aparecían en el documento y en el examen, seguían un orden similar.

4. Una de las preguntas del documento aparece con correcciones hechas el día de la reunión con la Junta, sin embargo, no aparece con las correcciones posteriores hechas en la Corporación Psicométrica.

Como parte de la referida investigación, se realizó un estudio comparativo de las puntuaciones obtenidas por los aspirantes que habían tomado el examen en más de una ocasión. Dicho estudio reveló que una cantidad sustancial de los aspirantes que no habían aprobado el examen en ocasiones anteriores, por haber obtenido una puntuación menor de veinte puntos, había aprobado el examen del 5 de mayo de 2001 con puntuaciones que sobrepasaban los cuarenta puntos, y algunos hasta obtuvieron una puntuación perfecta, cincuenta puntos. Además, una gran cantidad de los aspirantes que tomaron por primera vez el examen obtuvo una puntuación perfecta, resultado catalogado de inusual por el Consultor.

El informe del Consultor concluía que se había incurrido en serias irregularidades en el manejo y administración del examen ofrecido el 5 de mayo de 2001 y recomendaba su invalidación y la redacción de un nuevo banco de preguntas.

Ante la seriedad de los hallazgos de la investigación, el asunto fue referido a la consideración del Secretario de Estado, quien ordenó una investigación administrativa sobre las alegadas irregularidades y emitió una serie de directrices en relación con el asunto. También solicitó la intervención del Departamento de Justicia.

CC-2003-752                          4

A tenor con las directrices emitidas, representantes de la Oficina de Asuntos Legales del Departamento de Estado se reunieron con los miembros de la Junta y les informaron sobre los resultados de la investigación. Les informaron además del referido al Departamento de Justicia debido a sospechas de que el material del examen había sido provisto previamente a los estudiantes por miembros de la Junta. Entre otras cosas, se prohibió a los miembros de la Junta que expidieran licencias a los aspirantes que habían tomado y aprobado el examen teórico el 5 de mayo de 2001. **De manera que no se expidió licencia alguna a los aspirantes que aprobaron el examen teórico del 5 de mayo de 2001, incluyendo al recurrido Marcano Rivera.**

Por su parte, el Departamento de Justicia refirió la información recopilada al Negociado de Investigaciones Especiales, el cual realizó una investigación minuciosa del asunto y concluyó que **los estudiantes habían tenido acceso al material del examen debido a que algunos miembros de la Junta Examinadora se lo habían provisto.** Ello dio lugar a que se presentaran cargos criminales por violaciones a la Ley de Ética Gubernamental contra Helsone Ramos Vallés, Presidente de la Junta Examinadora, y José Pagán Morales, otro de los miembros de la Junta. Ambos resultaron convictos tras admitir los hechos y hacer alegación de culpabilidad por delitos menos graves.

Por otro lado, estando aún en curso la aludida investigación, el 20 de marzo de 2002, la representante

legal de Marcano Rivera inquirió, mediante una carta dirigida a Sosa Reyes, sobre la licencia esperada por su cliente. Esta misiva fue a su vez contestada por Helsone Ramos Vallés, Presidente en aquel momento de la Junta Examinadora. Ramos Vallés explicó en la carta, fechada el 2 de mayo de 2002, que a pesar de que el aspirante había aprobado el examen, **no se le permitía expedir una licencia a su favor puesto que se estaba realizando una investigación sobre unas alegadas irregularidades en el proceso de reválida**.

Luego de concluida la investigación criminal y la correspondiente presentación de cargos criminales contra los miembros de la Junta implicados en las irregularidades, el 25 de septiembre de 2002 la Junta emitió una resolución mediante la cual determinó anular el examen de 5 de mayo de 2001. Esto debido a que las irregularidades acaecidas con relación al examen imposibilitaban la certificación de un resultado confiable.

El 27 de septiembre de 2002 Josué Martínez Grueiro, Presidente Interino de la Junta, cursó a Marcano Rivera una misiva notificándole la anulación del examen del 5 de mayo de 2001 debido a las serias irregularidades referidas. Le indicó además que podría tomar el examen nuevamente, **libre de costo**. Todos los aspirantes recibieron comunicaciones similares.

El 9 de octubre de 2002 la Junta Examinadora publicó un aviso en un periódico de circulación general mediante el

cual se notificó la anulación del examen teórico de la reválida de perito electricista del 5 de mayo de 2001. El aviso también indicaba que los aspirantes que habían tomado el examen ese día podían tomarlo otra vez, libre de costo, en noviembre de 2002.

El 11 de octubre de 2002 la representación legal de Marcano Rivera envió una comunicación al Presidente Interino de la Junta mediante la cual solicitó la reconsideración de la referida decisión de anular el examen. Esta fue denegada mediante una carta fechada el 24 de octubre de 2002 y suscrita por Martínez Grueiro. En la misiva, Martínez Grueiro explicaba que debido a las irregularidades ocurridas resultaba imposible certificar los resultados del examen como válidos, pero que los aspirantes que habían tomado el examen en esa fecha podrían tomarlo de nuevo, libre de costo.

Ante la determinación final de la Junta Examinadora, el 22 de noviembre de 2003 Marcano Rivera presentó una petición de revisión ante el antiguo Tribunal de Circuito de Apelaciones alegando que la Junta había expedido una licencia de perito electricista a su favor y luego le había privado de ella, en violación del debido proceso de ley. Apoyó su alegación en el texto de la carta que recibiera durante el mes de mayo de 2002, suscrita por Ramos Vallés, en la cual declaraba lo siguiente:

> "el día 13 de junio de 2001, expedí la licencia núm. 10110 de Perito Electricista y desde el 19 de julio de 2001, algunos altos funcionarios del Departamento de Estado no me permiten expedir las

licencias de los que aprobaron [el examen] teórico del 5 de mayo de 2001, debido a que un ciudadano alega que se cometió irregularidades en el proceso de la reválida, lo cual fue referido al Departamento de Justicia para investigación,...".

El 23 de junio de 2003 el tribunal apelativo dictó una sentencia mediante la cual revocó la determinación de la Junta de anular la parte teórica del examen de 5 de mayo de 2001. El foro apelativo determinó que se había despojado a Marcano Rivera de su licencia de perito electricista en violación del debido proceso de ley, y devolvió el caso a la Junta Examinadora para que le ofreciera a Marcano Rivera una vista adjudicativa en la cual se le diera la oportunidad de ser oído y pudiera confrontar la prueba en su contra. El Procurador General solicitó la reconsideración de tal determinación, la cual fue denegada mediante una resolución notificada el 26 de agosto de 2003.

Inconforme con la determinación del tribunal apelativo, el Departamento de Estado, mediante su Director Ejecutivo de Juntas Examinadoras, y representado por el Procurador General, acudió ante nos y alegó lo siguiente:

**"Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que la Junta Examinadora de Peritos Electricistas estaba imposibilitada de tomar la medida de anular el examen teórico de la reválida para perito electricista tomado por el señor Marcano Rivera, aquí recurrido, en mayo de 2001, sin antes conceder a éste un procedimiento adjudicativo formal, a pesar de haberse evidenciado que se condujo una investigación que demostró la comisión de unas serias irregularidades por parte de los miembros de la propia Junta que viciaron los resultados del referido examen, y de que dicho organismo no llegó a emitir licencia alguna a favor del aspirante Marcano Rivera, por lo que el presente**

**caso no involucra la cancelación o suspensión de una licencia por parte de la Junta."**

El 7 de noviembre de 2003 expedimos el recurso solicitado. El 24 de febrero de 2004 la parte peticionaria presentó su alegato. La parte recurrida presentó el suyo el 30 de julio de 2004. Pasamos a resolver.

II

Es bien conocida la facultad del Estado para regular el ejercicio de las profesiones, como parte de su poder de razón de estado. Ello, con el importante "fin de proteger la salud y el bienestar público". Pueblo v. Villafañe, Contreras, 139 D.P.R. 134 (1995); Colegio de Ingenieros y Agrimensores v. A.A.A., 131 D.P.R. 735 (1992). Además, está firmemente establecido que estas disposiciones no despojan a los ciudadanos de sus profesiones, sino que las regulan por razón del eminente interés público de que están revestidas. San Miguel Lorenzana v. E.L.A., 134 D.P.R. 405 (1993); Asociación de Doctores en Medicina al Cuidado de la Salud Visual v. Morales, 132 D.P.R. 567 (1993); Román v. Tribunal Examinador de Médicos, 116 D.P.R. 71 (1985).

El Estado puede establecer unos requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otro que esté racionalmente relacionado con el objetivo de garantizar que los examinados posean la competencia para practicar la profesión en forma adecuada. De Paz Lisk v. Aponte Roque, 124 D.P.R. 472 (1989); Santiago

<u>Girona v. Tribunal Examinador de Médicos</u>, 118 D.P.R. 1 (1986).

El Estado también puede prohibir la práctica de la profesión si no se ha obtenido antes una licencia, permiso o certificado de alguna entidad u oficial examinador. <u>Colegio de Ingenieros y Agrimensores v. A.A.A.</u>, *supra*. De este modo, se ha delegado en las Juntas Examinadoras la tarea de corroborar que un ciudadano posea los conocimientos y destrezas necesarios para ejercer determinada profesión. A estos organismos se les ha reconocido una extensa discreción "en la fijación de las normas y procedimientos que han de regir los procesos de admisión o certificación de personas al ejercicio" de profesiones u oficios. <u>Asociación de Doctores en Medicina al Cuidado de la Salud Visual v. Morales</u>, *supra*; <u>Santiago Girona v. Tribunal Examinador de Médicos</u>, *supra*. Sus actuaciones deben regirse por el criterio de razonabilidad. <u>Santiago Girona v. Tribunal Examinador de Médicos</u>, *supra*. Empero, al ejercer su función, no pueden violar los derechos constitucionales de los aspirantes amparándose en su amplia facultad revisora. <u>Torres Acosta v. Junta Examinadora de Ingenieros</u>, res. el 27 de abril de 2004, 161 D.P.R. ___, 2004 TSPR 65, 2004 JTS 71.

III

La Junta Examinadora de Peritos Electricistas fue creada mediante la Ley Núm. 115 de 23 de junio de 1976, 20 L.P.R.A. sec. 2701 (en adelante la Ley), para que fuera "el organismo

encargado de pasar juicio sobre la capacidad de los aspirantes a desempeñar este oficio".[1]

El Art. 5 de la Ley dispone, en lo aquí pertinente, las facultades que le asisten a la Junta Examinadora:

> (a) Autorizará el ejercicio de la profesión de perito electricista y aprendiz de perito electricista, mediante la concesión de licencia, a aquellas personas que **reúnan los requisitos y condiciones que se fijan en este capítulo.**
>
> ....
>
> (e) Examinará a aquellas personas que soliciten licencia y que cualifiquen para ello de acuerdo con lo dispuesto en este capítulo.
>
> ....
>
> (g) Denegará, suspenderá o revocará licencias por las razones que se consignan en este capítulo.
>
> ....
>
> (k) **Realizará cualquier gestión y tendrá cualquier otra facultad en adición a las consignadas que sea necesaria para cumplir con las disposiciones de este capítulo.** 20 L.P.R.A. sec. 2705. (Énfasis suplido)

El Art. 8 de la Ley, 20 L.P.R.A. sec. 2707, detalla los requisitos que tiene que cumplir toda persona que aspire a la licencia de perito electricista, entre los cuales se encuentra la aprobación de un examen de reválida. Por su parte, el Art. 9 de la Ley, 20 L.P.R.A. sec. 2708, versa sobre el referido examen de reválida:

> (a) Los exámenes se ofrecerán por la Junta tres (3) veces al año, cada cuatro (4) meses.
>
> (b) Los exámenes constarán de dos (2) partes, una práctica y otra teórica. Cada parte tendrá un valor de puntos que la Junta determine

---

[1] Véase, Exposición de Motivos de la Ley.

conforme a su reglamento y la puntuación mínima para pasar cada parte será de setenta por ciento (70%) de ésta.

**(c)** Disponiéndose, que los aspirantes **tendrán que pasar ambas partes del examen para que les sea otorgada la licencia.**

(d) Si un aspirante fracasa en una parte del examen y aprobase la otra, solamente se tendrá que reexaminar en la parte fracasada. La parte aprobada expirará al término de dos (2) años y tendrá que reexaminarse en ambas partes. (Énfasis suplido)

Por otro lado, según el Art. 15 de la Ley, la Junta puede denegar la concesión de una licencia previa notificación y audiencia a cualquier persona que: (a) trate de obtener una licencia mediante fraude o engaño; (b) no reúna los requisitos para obtener una licencia; (c) haya sido declarada incapacitada mentalmente por un tribunal competente, y se estableciera ante la Junta mediante peritaje médico su incapacidad. 20 L.P.R.A. sec. 2714.

En adición, el Art. 16 dispone que:

La Junta podrá suspender, revocar o denegar la concesión de la licencia **expedida** según las disposiciones de este capítulo, previa formulación de cargos, notificación y audiencia a cualquier persona que:

(a) emplee en su trabajo a personas no autorizadas por la Junta;

(b) observe una conducta inmoral en el ejercicio de su profesión o haber sido condenado por un tribunal por un delito que implique depravación moral o actuaciones ilegales que impliquen negligencia inexcusable o conducta lesiva a los mejores intereses del público en el desempeño de sus funciones profesionales;

(c)    certifique trabajos de electricidad sin haberlos realizado personalmente o haberlos supervisado;

(d)    haya obtenido una licencia mediante fraude o engaño;

(e)    haya sido declarada incapacitada mentalmente por un tribunal competente,...;

(f)    realice instalaciones eléctricas que no cumplan con los requisitos mínimos del Código Eléctrico Nacional Vigente, del Código Eléctrico de Puerto Rico y de los reglamentos promulgados por la compañía privada o pública encargada del suministro de energía eléctrica;

(g)    ejerza la profesión de perito electricista sin estar debidamente colegiado;

(h)    no haya tomado los cursos de Educación Continua del Colegio de Peritos Electricistas.  20 L.P.R.A. sec. 2715.

A tenor con la jurisprudencia antes citada, y según se desprende de las disposiciones transcritas, **la Junta Examinadora de Peritos Electricistas posee amplias facultades para examinar a las personas que soliciten la licencia de perito electricista y autorizar el ejercicio de la profesión a quienes reúnan los requisitos establecidos para ello**. La Ley habilitadora también le concede  a la Junta cualquier otra facultad "necesaria para cumplir con las disposiciones de este capítulo". Precisa señalar además que la Ley es clara al indicar en su Art. 10, 20 L.P.R.A. sec. 2709, que "[l]a Junta **será la única autorizada para determinar la suficiencia de los exámenes y la capacidad o aptitud de los aspirantes**".

Necesariamente, esta facultad implica la de anular algunas o todas las preguntas del examen de reválida si éstas son insuficientes para probar la capacidad de los aspirantes para ejercer esa profesión.

Por tanto, puede colegirse la facultad de la Junta para invalidar un examen de reválida si, tras una rigurosa investigación, queda demostrado que dicho examen no resultó adecuado para medir la capacidad de los aspirantes. Tal sería el caso cuando los procesos psicométricos aplicados durante la corrección del examen apunten a la necesidad de anular una o varias preguntas de éste; o exista prueba suficiente que apoye la conclusión de que hubo una irregularidad grave en la confección o administración del examen similar a la ocurrida en el presente caso. Debe tenerse en cuenta el alto interés público que reviste el ejercicio de las profesiones y el primordial interés del Estado en que las personas que sean admitidas a su ejercicio tengan la capacidad y los conocimientos y destrezas mínimos requeridos para poder ejercer la profesión en forma responsable. Santiago Girona v. Tribunal Examinador de Médicos, *supra*.

En el caso de autos la Junta tomó la determinación de anular la parte teórica del examen de reválida del 5 de mayo de 2001 luego de realizar una investigación a fondo mediante la cual detectó serias irregularidades en el manejo y administración de dicho examen. El Estado tomó una serie de pasos antes de arribar a este resultado. Al recibir información que apuntaba hacia la posible comisión de

irregularidades serias en el manejo del material del examen previo a su administración, el Departamento de Estado comisionó un estudio a la Corporación Psicométrica cuyos resultados corroboraron las sospechas de irregularidades; alguien había circulado entre los aspirantes la clave del examen. El Departamento de Justicia también efectuó la correspondiente investigación, la cual incluyó un referido al Negociado de Investigaciones Especiales, que culminó con la presentación de cargos criminales contra personas que al momento de la administración del examen eran precisamente miembros de la Junta Examinadora, uno de los cuales era nada menos que su Presidente. **Ambos imputados admitieron su participación en el esquema fraudulento**.

Tras la conclusión de las investigaciones referidas, y la convicción y destitución de los implicados, la Junta sostuvo una reunión en la que determinó que, ante la gravedad de las irregularidades y los resultados arrojados por el estudio que efectuó la Corporación Psicométrica, no era de ningún modo razonable que se certificaran los resultados del examen del 5 de mayo de 2001 como válidos. Las graves irregularidades en la administración del examen de reválida en cuestión imposibilitaban determinar cuáles aspirantes tenían los conocimientos mínimos requeridos para ejercer la profesión de perito electricista en forma responsable. Ante esta conclusión, la única alternativa plausible era anular el examen teórico y permitir a todos los aspirantes afectados

tomarlo de nuevo, libre de costo. Tal fue la determinación que luego se notificó a todos los afectados.

Ante el cuadro fáctico presentado, resolvemos que la Junta tenía la discreción para actuar del modo en que lo hizo. Su determinación fue claramente razonable. Actuar de otra forma hubiese constituido una irresponsabilidad.

Vista la facultad de la Junta Examinadora para anular un examen de reválida, procede entonces determinar si al recurrido le asistía el derecho, como parte del debido proceso de ley, a un procedimiento administrativo previo a la anulación del examen, para que él tuviera la oportunidad de confrontar los cargos y la prueba en su contra y presentar prueba en su favor. Veamos.

IV

La cláusula de debido proceso de ley, consagrada en el Artículo II, Sección 11 de nuestra Constitución abarca dos dimensiones: la sustantiva y la procesal. Álvarez Elvira v. Arias Ferrer, res. el 18 de marzo de 2002, 156 D.P.R. ___, 2002 TSPR 31, 2002 JTS 37. La vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo sólo ocurra mediante un procedimiento justo y equitativo, que respete la dignidad de los individuos afectados. Rosario & Assoc. v. Departamento de la Familia, res. el 21 de junio de 2002, 157 D.P.R. ___, 2002 TSPR 84, 2002 JTS 93; U. Ind.

Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998); Rivera Rodríguez v. Stowell, 133 D.P.R. 881 (1993).

Para activar la protección que ofrece este derecho en su vertiente procesal, **debe demostrarse que el reclamante tiene un interés individual de libertad o propiedad**. Almonte v. Brito, res. el 2 de abril de 2002, 156 D.P.R. ___, 2002 TSPR 37, 2002 JTS 43. Luego precisa determinar cuál es el procedimiento exigido. U. Ind. Emp. A.E.P. v. A.E.P., *supra*. Si bien la característica medular es que el proceso debe ser justo, éste no es rígido e inflexible, sino que se ajusta a las exigencias constitucionales de cada contexto. Partido de Acción Civil v. E.L.A., 150 D.P.R. 359 (2000); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987). Reiteradamente hemos resuelto que el debido proceso de ley es circunstancial. In re Dubón Otero, res. el 17 de abril de 2001, 154 D.P.R. ___, 2001 TSPR 76, 2001 JTS 79; Punta Arenas Concrete v. Junta de Subastas, res. el 30 de marzo de 2001, 153 D.P.R. ___, 2001 TSPR 41, 2001 JTS 50; P.A.C. v. E.L.A., *supra*; I.M. Winner v. Junta de Subastas Gob. Municipal de Guayanilla, res. el 17 de mayo de 2000, 151 D.P.R. ___, 2000 TSPR 74, 2000 JTS 86; U. Ind. Emp. A.E.P. v. A.E.P., *supra*.

Al determinar cuál es el proceso apropiado para privar a algún individuo de un derecho protegido precisa considerar los siguientes tres criterios: (1) cuáles son los intereses afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés

protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Zapata Saavedra v. Zapata Martínez, res. el 20 de febrero de 2002, 156 D.P.R. ___, 2002 TSPR 24, 2002 JTS 30.

Al contemplar la situación de autos a la luz de las disposiciones citadas, sólo cabe la conclusión de que al recurrido no le asistía un derecho particular a un procedimiento adjudicativo individual previo a la anulación del examen teórico del 5 de mayo de 2001. En el caso de autos nunca llegó a expedirse una licencia de perito electricista a favor del recurrido puesto que la Junta Examinadora paralizó el proceso de expedición de licencias mientras se investigaban las alegadas irregularidades. Esto sucedió antes de que se expidiera una licencia a favor de Marcano Rivera, como se desprende de la carta que le enviara Helsone Ramos, mediante la cual se le indicaba que "desde el día 19 de junio de 2001 algunos altos funcionarios del Departamento de Estado no me permiten emitir las licencias de los que aprobaron [el examen] teórico del 5 de mayo de 2001" y que "no había podido expedirla". De modo que la Junta Examinadora de Peritos Electricistas nunca llegó a expedir una licencia a favor de Marcano, por lo que éste no tenía aún un interés propietario sobre la licencia en cuestión que pudiera verse afectado por la acción gubernamental. Por esta razón tampoco le es de aplicación el

articulado que dispone el procedimiento a seguir para denegar o revocar licencias ya expedidas.

De celebrarse un procedimiento adjudicativo individual con respecto al caso de Marcano Rivera, éste hubiese sido impertinente y un ejercicio en futilidad. La prueba que pudiese haber aportado el recurrido no habría impedido la anulación del examen del 5 de mayo de 2001 puesto que **no había alegación alguna de que las irregularidades que obligaron a tal determinación hubiesen sido cometidas por Marcano Rivera**. No había mácula alguna contra éste por que él no estaba implicado personalmente. La anulación del examen no se basó en acción alguna de Marcano Rivera, por lo que él no estaba particularmente involucrado en tal anulación. Por otro lado, la anulación del examen teórico no perjudicó en forma desmedida a Marcano Rivera particularmente puesto que se le dio, al igual que a los demás aspirantes, la oportunidad de tomar el examen de nuevo, libre de costo.

El único interés que Marcano Rivera realmente tenía era que ya había aprobado el examen de reválida en cuestión, y ahora se veía precisado a tomarlo de nuevo. Ese interés, valioso como es, sin embargo, tiene que ceder necesariamente frente al preeminente interés público en que la certificación de nuevos profesionales en el campo de peritos electricistas sea adecuada y libre de mácula; sobre todo que sea ajena a acciones fraudulentas como las que aquí ocurrieron. La carga para Marcano Rivera de tener que tomar el examen de reválida de nuevo es una de esas imposiciones

poco fortuitas que las personas tienen que aceptar en situaciones excepcionales como las del caso de autos, cuando imperiosas consideraciones de interés público exigen acciones como la determinación que tomó la Junta Examinadora aquí de anular el examen de reválida plagado por irregularidades.

V

Por los fundamentos antes expuestos procede que se revoque la sentencia del antiguo Tribunal del Circuito de Apelaciones del 23 de junio de 2003 y se reinstituya el dictamen de la Junta Examinadora de 25 de septiembre de 2002.

Se dictará sentencia de conformidad.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emmanuel Marcano Rivera

    Recurrido

        vs.                   CC-2003-752      Certiorari

Departamento de Estado como
Director Ejecutivo de Juntas
Examinadoras, Etc.

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 23 de febrero de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia del antiguo Tribunal del Circuito de Apelaciones del 23 de junio de 2003 y se reinstituye el dictamen de la Junta Examinadora de 25 de septiembre de 2002.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente con opinión escrita. El Juez Asociado señor Rivera Pérez no intervino. La Juez Asociada señora Rodríguez Rodríguez no interviene.

                Aida Ileana Oquendo Graulau
                Secretaria     del     Tribunal
Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emmanuel Marcano Rivera

    Recurrido

       v.                     CC-2003-752   CERTIORARI

Departamento de Estado como
Director Ejecutivo de Juntas
Examinadoras, etc.

    Peticionario

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 23 de febrero de 2005

Estamos, simple y sencillamente, <u>impedidos</u> de suscribir, y endosar con nuestro voto, la Opinión emitida en el presente caso por una mayoría de los integrantes de este Tribunal. Ello por entender que se ha realizado una interpretación <u>completamente errónea</u> de la legislación y jurisprudencia aplicable, obteniendo, por consiguiente, <u>un resultado absurdo y sin sentido que lesiona y lastima los derechos del aquí recurrido</u>. Veamos.

I

En el presente caso el Departamento de Estado, en su carácter de Director Ejecutivo de Juntas Examinadoras, acudió ante nos alegando que

el Tribunal de Apelaciones había incidido al resolver que la Junta Examinadora de Peritos Electricistas estaba impedida de anular el examen de reválida tomado por el señor Marcano Rivera sin ofrecerle a éste las garantías mínimas del debido proceso de ley.

Al así resolver el referido foro intermedio entendió que la determinación de la Junta Examinadora carecía "totalmente de conclusiones de hecho y de derecho en abierta violación a las diáfanas disposiciones de la Sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164."[2] Asimismo, el tribunal

_____

[2] A la fecha en que el Tribunal Apelativo emitió su dictamen la referida sección disponía:

> Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.
>
> La orden deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.
>
> La orden o resolución advertirá el derecho de solicitar la reconsideración o revisión de la misma, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos.
>
> La agencia deberá notificar por correo a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible, y deberá

apelativo intermedio expresó que "[b]rillan por su ausencia las explicaciones sobre la naturaleza de las alegadas irregularidades y el procedimiento mediante el cual se determinó su existencia y magnitud que justificaran que se le niegue la licencia a un aspirante en particular que aprobó los dos exámenes y que cuestionó la decisión de que se le anulara el examen teórico, sin que exista el más mínimo indicio de que él haya incurrido en conducta impropia alguna."

El foro apelativo intermedio cuestionó el hecho de que se haya omitido señalar "cuáles fueron los procedimientos utilizados por la Junta, cuáles fueron las disposiciones reglamentarias aplicadas, y cuál fue la prueba oral y documental que la Junta tuvo ante su consideración" al momento de emitir su dictamen. A esos efectos, señaló el referido tribunal que "la parte recurrida ha tendido un velo de misterio, que es incompatible con las nociones más elementales de justicia y debido proceso de ley."

De este modo, el referido foro apelativo concluyó que "a la luz de todas las circunstancias concurrentes es improcedente la anulación del examen teórico del peticionario sin que se le ofrezcan las garantías mínimas

archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrán ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma.

del debido proceso de ley, incluyendo, por supuesto, que se fundamente con conclusiones de hecho y de derecho el dictamen final de la agencia."

En el presente caso es de particular importancia lo dispuesto en el Artículo 15 de la Ley Núm. 115 de 23 de junio de 1976, 20 L.P.R.A. sec. 2714. El mismo dispone:

> La Junta podrá <u>denegar</u> la concesión de una licencia <u>previa notificación y audiencia</u> a cualquier persona que:
>
> (a) <u>Trate de obtener una licencia mediante fraude o engaño</u>.
>
> (b) No reúna los requisitos para obtener una licencia de acuerdo a lo dispuesto en este capítulo.
>
> (c) Haya sido declarada incapacitada mentalmente por un tribunal competente; se estableciera ante la Junta mediante peritaje médico su incapacidad;
>
> Disponiéndose, que la licencia podrá otorgarse tan pronto la persona sea declarada nuevamente capacitada y si reúne los demás requisitos dispuestos en este capítulo. (énfasis suplido).
>
> . . .

Por su parte, el Artículo 16 de la Ley, 20 L.P.R.A. sec. 2715, dispone, en lo aquí pertinente:

> La Junta podrá suspender, revocar o <u>denegar</u> la concesión de la <u>licencia expedida</u> de acuerdo con este capítulo, <u>previa formulación de cargos, notificación y audiencia</u> a cualquier persona que:
>
> (a) Emplee en su trabajo a personas no autorizadas por la Junta.
>
> (b) Observe una conducta inmoral en el ejercicio de su profesión o haber sido condenado por un tribunal por un delito que implique depravación moral o por actuaciones ilegales que impliquen negligencia

inexcusable o conducta lesiva a los mejores intereses del público en el desempeño de sus funciones profesionales.

(c) Certifique trabajos de electricidad sin haberlos realizado personalmente o haberlos supervisado.

(d) Haya obtenido una licencia mediante fraude o engaño.

(e) Haya sido declarada incapacitada mentalmente por un tribunal competente, o se estableciera ante la Junta mediante peritaje médico su incapacidad;

Disponiéndose, que la licencia podrá otorgarse tan pronto la persona sea declarada nuevamente capacitada y si reúne los demás requisitos dispuestos en este capítulo.

(f) Realice instalaciones eléctricas que no cumplan con los requisitos mínimos del Código Eléctrico Nacional vigente, del Código Eléctrico de Puerto Rico y de los reglamentos promulgados por la compañía privada o pública encargada del suministro de energía eléctrica.

(g) Ejerza la profesión de perito electricista sin estar debidamente colegiado.

(h) No haya tomado los cursos de Educación Continua del Colegio de Peritos Electricistas. (énfasis suplido).

. . .

Como vemos, ambas disposiciones proveen, entre otras cosas, para aquellos casos en que la Junta Examinadora de Peritos Electricistas deniega una licencia. El Artículo 15 atiende el supuesto en que la denegación ocurre antes de concedida la licencia y el Artículo 16 contempla aquellos casos en que ya la licencia ha sido expedida. Ello no obstante, ambas disposiciones establecen el requisito de

"previa notificación y audiencia", como requerimiento para la referida denegación.

Sin necesidad de dilucidar si en el presente caso la Junta expidió o no la licencia de perito electricista a favor de Marcano Rivera, es evidente que en uno u otro supuesto debió cumplirse con el requisito de "previa notificación y audiencia" que exige la Ley.[3] Esto fue precisamente lo que alegó el recurrente al acudir al foro apelativo intermedio y lo que concedió el referido foro al emitir su sentencia.

En el día de hoy una mayoría de este Tribunal, al revocar la determinación del Tribunal de Apelaciones, errónea e increíblemente expresa que "[d]e celebrarse un procedimiento adjudicativo individual con respecto al caso de Marcano Rivera, éste hubiese sido impertinente y un ejercicio en futilidad." Añade que "[l]a prueba que pudiese haber aportado el recurrido no habría impedido la anulación del examen del 5 de mayo de 2001 puesto que no había alegación alguna de que las irregularidades que obligaron a tal determinación hubiesen sido cometidas por Marcano Rivera." Asimismo, sostiene que "[n]o había mácula alguna contra éste por que él no estaba implicado personalmente" y que "[l]a anulación del examen no se basó en acción alguna

---

[3] A diferencia de lo que argumenta la Mayoría, en cuanto a que la anulación del examen respondió a que el mismo no resultó adecuado para medir la capacidad de los aspirantes, es claro que en este caso las licencias fueron denegadas ante las sospechas de la existencia de fraude o engaño.

de Marcano Rivera, por lo que él no estaba involucrado en tal anulación".

Somos del criterio que los fundamentos en los que se apoya la Mayoría para obviar el requisito de ley sobre "previa notificación y audiencia" de forma alguna justifican la ausencia de garantías mínimas que requiere la ley y a las que hiciera referencia el foro apelativo intermedio. Estas explicaciones, por bonitas que parezcan, no sustituyen los procedimientos legales provistos por el legislador al momento de redactar la Ley Núm. 115, ante.

Por otra parte, resultan contradictorias las expresiones de la Mayoría a los efectos de que el examen de Marcano Rivera debe ser anulado cuando se sostiene que "no había mácula alguna contra éste". Nos parece particularmente injusto que se le imponga a éste la carga de tomar el examen nuevamente, no obstante concluirse que "él no estaba particularmente involucrado en tal anulación". No cabe duda de que si existe la posibilidad de llegar a las determinaciones que --de forma tan contundente-- hoy hace la Mayoría, entonces podría abordarse el asunto de la nulidad de los exámenes caso a caso, sin necesidad de perjudicar a todos los aspirantes por igual. Si, como aduce la Mayoría, no había alegación alguna de que las irregularidades hubiesen sido cometidas por Marcano Rivera, no vemos razón alguna para que éste tenga que sufrir las consecuencias de actos ajenos.

Como vemos, estamos ante un caso en que se ha realizado una investigación <u>incompleta e insuficiente</u> y se le ha <u>violado</u> el debido procedimiento de ley al señor Marcano al no seguirse el <u>requisito estatutario</u> de formulación de cargos, notificación y audiencia. A nuestro juicio este caso ameritaba una investigación exhaustiva donde se identificaran a los aspirantes que tuvieron, o pudieron haber tenido, acceso a las preguntas del examen. Cualquier otra conclusión nos parece no sólo injusta, sino, además, inapropiada e improcedente en derecho. <u>La injusticia no tiene cabida en nuestras decisiones</u>.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado